## SAINT LOUIS INSURANCE COMPANY vs. ROBERT KYLE.

1. Where, by the conditions of a policy of insurance, notice of the loss is required to be given *forthwith*, it is only necessary that the notice should be given *with due diligence under all the circumstances of the case.*

2. The receiving a notice, and failing to make objection to its being given in time, is no waiver of the notice.

3. Formal defects in the preliminary proof of loss, may be regarded as waived, by the insurers pleading their refusal to pay on other grounds, and evidence of such waiver may be given under an averment of performance.

## APPEAL from St. Louis Circuit Court.

### *Statement of the Case.*

This was an action of covenant, commenced in the St. Louis Circuit Court on the 28th October, 1845, by the appellee against the appellant, on a policy of insurance to the amount of six thousand dollars, on manufactured tobacco, cut, chewing and smoking tobacco, leaf tobacco, presses, screws and fixtures, cutting machine and fixtures, household furniture, shed and fixtures, against loss or damage by fire—the said articles being contained in a two story stone building, situate north of Biddle street and near Roy's tower, being the property of Peter Lindell, and occupied by the assured as a tobacco factory. The insurance was for one year, commencing 25th November, 1844, and ending 25th November, 1845, at noon.

The loss or damage, if any, to be established according to the true and actual value of the property, at the time it should happen, *and to be paid within sixty days after due notice and proof thereof made by the insured in conformity to the conditions annexed to the policy*—with the usual exceptions of losses by invasion, &c., and provisions against double insurance—which policy was declared to be made and accepted in reference to the terms and conditions thereto annexed, which are to be used and resorted to in order to explain the rights and obligations of the parties thereto, in all cases not otherwise specially provided for.

The terms and conditions referred to are those usual in fire policies, being twelve in number—the 9th, 10th and 11th of which are material to be considered in the determination of the questions presented by the record. They are as follows:

IX. Persons sustaining loss or damage by fire, shall forthwith give notice thereof in writing to the company; and as soon after as possible, they shall deliver as particular an account of their loss and damage as the nature of the case will admit, signed by their own hands, and the same to be corroborated by the exhibit of the assured's books of account, and other vouchers in his power to furnish, whenever the same may be required. And they shall accompany the same with their own oath or affirmation, declaring the said account to be true and just—showing also what other insurances, if any, have been made on the same property; what was the whole value of the subject insured; in what general manner (as to trade, manufactory, merchandize, or otherwise) the building insured or containing the subject insured, and the several parts, were occupied at the time of the loss, and who were the occupants of such building, and when and how the fire originated, as far as they know or believe. They shall also produce a certificate, under the hand and seal of the magistrate or notary public most contiguous to the place of the fire, and not concerned

in the loss, stating that he has examined the circumstances attending the fire, loss or damage alleged, and that he is acquainted with the character and circumstances of the insured or claimant, and that he verily believes that he, she or they, have, by misfortune, and without fraud or evil practice, sustained loss or damage on the subject insured, to the amount which the magistrate or notary public shall certify; and until such proofs, declarations and certificates are produced, the loss shall not be payable.

X. All fraud or false swearing shall cause a forfeiture of all claims on the insurers, and shall be a full bar to all remedies against the insurer on the policy.

XI. In case differences shall arise touching any loss or damage, it may be submitted to the judgment of arbitrators, indifferently chosen, whose award in writing shall be binding on the parties; and payment shall be made in sixty days after the loss shall have been ascertained and proved, without any deduction whatever.

The first count of the declaration sets out the policy, with all the conditions annexed, and avers : 1st, the interest of the insured to the whole amount insured at the time of the loss; 2nd, that tobacco and other articles mentioned in the policy, being contained in the building described in the policy, were consumed and destroyed by fire, on the 1st April, 1845, without invasion, &c., by which plaintiff sustained damage $6,000; 3rd, that plaintiff had made no other insurance; 4th, that the building was not used for any other purpose than that of a tobacco factory; 5th, that upon the happening of the said loss by fire, the plaintiff forthwith caused notice in writing of said loss to be given to the defendants; and, 6th, that afterwards, on the 5th April, 1845, at the office of A. Carr, J. P., the defendants appeared, by their attorney, and the plaintiff also appeared, to make proofs of the loss of said goods, chattels and property so insured, and the plaintiff then and there, before said justice, did deliver as particular an account of his loss and damage by reason of said fire as the nature of the case would admit; which said account was then and there signed by the plaintiff, and the plaintiff accompanied the said account of loss with his oath declaring the said account to be true and just, and showing that there was no other insurance on the said goods in the policy mentioned and insured thereby, and showing the value of the property insured, and in what manner the building containing the property insured was occupied—who were the occupants of said building, and where and how the fire originated, as far as the said plaintiff knew or believed; that the account and proofs were further established by the oaths of witnesses, and the said proofs, in presence of said attorney of said defendants, were reduced to writing in substance, and on the day and year aforesaid, at the place aforesaid, the said account of loss and the said proofs were delivered to the said defendants. 7th, that afterwards, to-wit, on the 16th day of August, 1845, he (the plaintiff) did cause to be produced and delivered to the defendants, a certificate, under the hand and seal of A. Carr, a magistrate, whose office was, at the time of said loss by fire, most contiguous to the place of said fire, and who was not concerned in said loss, stating that on the 5th April, 1845, *he had heard the proofs of the loss of said goods and property in the plaintiff's tobacco factory, by fire,* on the 1st April, 1845; that he had examined the circumstances attending the fire and loss alleged, to-wit : the loss of said goods and property in the said tobacco factory, which were insured in the said St. Louis Insurance Company, for six thousand dollars, by policy dated 25th November, 1844, to which he referred; that he was acquainted with the circumstances and character of the plaintiff, the insured, and that he verily believed that the plaintiff, without fraud or evil practice, sustained loss and damage on the said goods and property insured, and specified in the said policy, to the amount of $6,000. 8th, that more than sixty days after notice and proof of said loss and damage, and the delivery of the said certificate, he did demand and claim of the defendants, the amount of the loss, and although the plaintiff had performed all things, &c., generally, the defendant did not pay, but refused, &c.

The second count is on the same policy, with the same averments, in substance, as the first.— The defendant filed twenty-four pleas, all of which, except the 8th, 9th, 17th, 18th, 23rd and 24th, are to both counts. The 8th, 17th and 23rd are to the first count, and the 9th, 18th and 24th to the second count. The plaintiff demurred to the 17th, 18th, 20th, 21st, 23rd and 24th pleas; the

demurrer was overruled as to the 17th and 18th pleas, and sustained as to the residue. The 1st, 2nd, 3rd, 5th, 7th, 8th, 9th, 10th, 11th, 19th and 22nd are denialss of the averments in the declaration, in their order, to which the plaintiff formally joined issue and replied specially to each of 4th, 6th, 12th to 18th pleas, inclusive.

The first plea is *non est factum;* the second and third deny the interest of the plaintiff in the property at the time of the loss; the fifth denies the loss as alleged; the seventh traverses in detail the averment of a compliance with the 9th condition of the policy; the 8th denies that plaintiff did deliver a particular account of his loss, &c., as the aature of the case would admit of, and accompany the same with his oath or affirmation showing whether any and what other insurances had been made on the property, in manner and form as in the first count alleged; the ninth is to the second count, in the same words as the 8th plea; the 10th denies that the plaintiff caused to be delivered to the defendant the certificate of Archibald Carr, to the effect and in the manner and form alleged; the 11th denies that the plaintiff delivered to the defendant an account, on oath or affirmation, showing how the fire originated, so far as he knew or believed, in manner and form, &c.; the 19th denies the payment of premium, and the 22nd denies that the plaintiff did forthwith give notice of the loss, as averred.

The 4th plea alleges that the property mentioned in the policy was described by the plaintiff otherwise than the same really were, so that the same was insured at a lower premium than it ought to have been.

The 6th plea alleges that at the time of the loss, the buildings, in which the property insured was, were occupied in such way as to render the risk more hazardous than they were at the time of insurance.

The 12th plea alleges that in the claims made by the plaintiff, there was fraud within the true intent and meaning of the 9th and 10th conditions of the policy—that is to say, in taking the quantity, nature and value of the property, &c.

The 13th alleges that in the oaths and affidavits and each of them made by the plaintiff in support of the claim for loss, &c., there was false swearing, within the meaning of the 9th and 10th conditions of the policy, in this, that he swore that the affidavit showed when and how the said fire originated, as far as the said plaintiff knew or believed, whereas the said affidavit did not show truly how said fire originated, as far as the plaintiff knew or believed.

The 14th avers the loss to have been occasioned by the careless negligence and improper conduct of the plaintiff.

The 15th charges that the fires were intentionally and fraudulently kindled, lit, &c., by the plaintiff. The 16th charges that the fires were caused to be kindled, &c., by the plaintiff.

The 17th avers that when the building was burned, the tobacco was not in the building, as alleged in the first count. The 18th is the same to the second count.

The 20th plea alleges that the plaintiff did, since the making of the policy, and during the continuance thereof, appropriate, apply and use the building specified for the purpose of carrying on and exercising trade and business other than the business or vocation of a tobacco manufactory.

The 21st states that, after the making the policy and during the continuance thereof, the plaintiff did use the said buildings and premises in the policy mentioned for the purpose of storing therein goods, chattels and merchandize not of the kind and description insured.

The 23rd is to the first count, and states, that although the loss in that count mentioned happened on the first of April, yet the plaintiff did not give notice thereof until the 5th April, 1845, although the office of the defendant was in the city of St. Louis, and the defendant might have given the notice at any time.

The 24th plea is the same to the second count.

. The replications traverse the averments in the 4th, 6th, 14th, 15th and 16th pleas.

The replication to the 12th plea is, that the plaintiff did, as soon as possible after the loss, give to the defendant as particular an account of the said loss and damage as the nature of the case would admit, as alleged in the declaration, and that there was no fraud within the meaning of the

9th and 10th condition, in the claim made for said loss or damage, nor was there any fraud in taking the quantity, nature or value of the said goods, in manner and form, &c.

To the 14th plea, the replication is, that in the oaths and affidavits, &c., in support of the claims, there was not false swearing, nor did the plaintiff, in swearing where and how the said fire originated, as far as he knew and believed, swear falsely, and the said oath and affidavit showed truly how said fire originated, so far as said plaintiff knew and believed.

The replications to the 17th and 18th pleas aver that the tobacco alleged to have been burnt up, was, at the time of the execution of the policy, contained in the building described therein.

At the trial, the issues were found for the plaintiff and judgment rendered accordingly, from which this appeal is prosecuted.

At the trial, the plaintiff read in evidence the policy of insurance as set forth in the policy, with the conditions therein referred to. 2nd. A notice signed by the plaintiff, bearing date the 5th of April, 1845, addressed to George K. McGunnegle, President of the St. Louis Insurance Company, notifying him that a certain store house, lately eccupied by Robert Kyle, containing a stock of tobacco, presses, furniture, &c., situate, &c., was consumed by fire on the morning of the first instant, which building was insured at the office of the St. Louis Insurance Company, as per policy No. 1529, and dated 25th November, 1844, and that depositions are now being taken before Archibald Carr, Esq., at his office, St. Louis township. 3rd. The application of the plaintiff for insurance, dated 25th November, 1844. 4th The survey of the premises, of same date. 5th. Proofs of loss relied on as a compliance with the 9th condition of the policy, as follows:

State of Missouri, }
County of St. Louis, } ss. Be it remembered, that on this fifth day of April, eighteen hundred and forty-five, before the undersigned, Archibald Carr, a justice of the peace within and for the county aforesaid, came Robert Kyle, who being by me duly sworn, on his oath deposeth and saith, that on the first day of April, eighteen hundred and forty-five, about the hour of four o'clock in the morning, the two story stone building north of Biddle street and near Roy's Tower in the city of St. Louis, Missouri, containing the following stock of tobacco and fixtures, viz:—

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 200 boxes fine manufactured tobacco, at $25 per box, | | | - | - | - | - | $5,000 00 |
| 85 do. | do. | do. | $20 | " | - | - | - | - | 1,700 00 |
| 64 do. | do. | do. | $10 | " | - | - | - | - | 640 00 |
| Cut chewing tobacco, | - | - | - | - | - | - | - | - | 200 00 |
| Cut smoking tobacco, | - | - | - | - | - | - | - | - | 650 00 |
| 4 wooden presses, screws and fixtures, | - | - | - | - | - | - | 800 00 |
| 2 hogsheads manufacturing tobacco, | - | - | - | - | - | - | 110 00 |
| Cut and short tobacco and stems, | - | - | - | - | - | - | - | 250 00 |
| 4 patent iron presses, screws and fixtures, | - | - | - | - | - | 900 00 |
| 1 cutting machine and fixtures, | - | - | - | - | - | - | - | 350 00 |
| Paper and papering fixtures, | - | - | - | - | - | - | - | 75 00 |
| Patent balances, iron clamps and flatteners, | - | - | - | - | - | 240 00 |
| Shed and fixtures, | - | - | - | - | - | - | - | 250 00 |
| Household furniture, | - | - | - | - | - | - | - | - | 300 00 |

Were consumed—and this deponent says that it is not in his power to give a more particular description, for the reason that all of his books and accounts were consumed in the building aforesaid, and that the foregoing list of goods, and the value thereof, is true and correct—and thedeponent further says, that there was no other insurance on said goods than that which was effected at office of the St. Louis Insurance Company; that he, the said deponent, was the sole occupant of the said building; that it was used as a tobacco factory only; that the said building was set on fire by some person or persons unknown to this deponent, in the wing of the west side of the said building, to the best of his knowledge and belief. The persons in the habit of sleeping in the said building, were Robert McLarin and Thomas Day, (white men,) and Jack, Moses, Ben, Polly, Priscilla, and three or four children, (negroes;) that there was no cooking done in the said building; that said building was heated by a wood fire, made in a fire-place; the white men aforesaid

were in the habit of sleeping in the west wing of said building, where the fire first took effect; and further deponent saith not.　　　　　　　　　　　　　　　　　　　　　　ROBERT KYLE.

Sworn to and subscribed before me, this fifth day of April, 1845.

ARCHIBALD CARR, *Justice of the Peace.*

Annexed to the document, are the affidavits of Robert McLarin and Thomas Day. Both state some of the circumstances of the fire. McLarin swears that the goods enumerated by Mr. Kyle were all in the house when it first took fire; that the value attached is correct; that the goods were all consumed or damaged so as to render them of little or no value. He then refers to a list of articles saved in a damaged state.

The plaintiff also read in evidence a letter signed by him, dated June 5th, 1845, addressed to the Board of the President and Directors of the St. Louis Insurance Company, stating that on the fifth April, he had furnished proof of the loss of his stock of tobacco, and demanding payment—also a copy of the record of the proceedings of the board of directors, by which it appears that the board, on the 5th May, by resolution, approved the action of the President in employing counsel to attend to the interest of the company in the charge made before justice McKinney against Robert Kyle for arson. On the 5th June, the letter of the plaintiff of that date being before the board, it was resolved that the President be requested and directed to inform Robert Kyle that this company does not consider itself liable for said claim. The President accordingly informed the plaintiff, by letter of the same day, of the resolution of the board.

The plaintiff read in evidence two certificates of Archibald Carr, one dated the 5th of April, and the other the 15th August, 1845. The first does not, the second does, correspond with the averments in the declaration.

The President of the St. Louis Insurance Company was examined as a witness—produced the same papers herein before mentioned, (except the policy and notice of loss.) He stated that on the evening of the 5th April, Mr. Kyle delivered to him a notice, which he, witness, supposed was a notice to take depositions; he handed the notice to Mr. Crockett, and requested him to attend to it, and had not seen it since. That he, witness, did not refuse to receive the notice or proofs from Mr. Kyle, nor tell him that the notice was not sufficient—did not think that he made any objection to the proofs of loss taken before justice Carr. When Mr. Kyle came to the office on the evening of the 5th with the notice, he, witness, complained of delay, and the plaintiff apologized; that witness had gone to the fire on the day the premises were burnt, with two Directors of the Insurance Company and a tobacco inspector, and examined the loss, and told servants of plaintiff to save some tobacco got out of the fire.

It appears from the evidence of justice Carr, that the plaintiff commenced taking his proofs on Friday, the fourth of April; that the affidavits or statements were written out and the oaths administered afterwards. The course adopted was to interrogate the witnesses and collect the substance of their answers, to be embodied in an affidavit; that the affidavits were partly written out on Friday and finished the next day in the evening when Mr Briggs, a partner of Mr Crockett, appeared at the office.

It was proved that on the night of the 26th March, 1845, there was an attempt to burn the building, by setting fire at four or five different places in the attic story. Another attempt was made in like manner to fire the house on the night of the 31st of the same month, about midnight, which was discovered and arrested by extinguishing the fire, at several places; but afterwards, at about two o'clock, A. M., 1st April, it was discovered that fire had been set near the north-west corner of the building, which had advanced so far that it could not be arrested, and the building was consumed. Very little property was saved, and the greater part of that in a damaged state.

Robert McLaren, the principal witness for the plaintiff, testified that, a day or two before the fire, he counted the boxes of manufactured tobacco and other property in the house—and, according to his statement, every article mentioned in the account signed and sworn to by the plaintiff, was then in the building. He also testified to the value of the tobacco of different kinds, as stated in that account, and that the presses and cutting machine cost the sums stated by Kyle as the

value, as appeared by bills shown to him by Kyle—but he neither stated the value, nor gave such description of the other articles, as to enable the jury to ascertain the value.

Thomas Day, the only other white man in the building, was examined by the defendant—he testified to the circumstances attending the discovery and extinguishment of the fire on the 26th March and the first on the night of the 31st March—as also the discovery of the fire which consumed the building. The two witnesses corroborated each other in their statements, except in unimportant details, in all respects, except those which related to the discovery of the person by whom the fires were set the first time on the night of the 31st March. Day, according to the testimony of both witnesses, on the alarm being given, jumped up, seized his gun and without putting on his clothes, ran out to the back porch of the building, while McLaren remained in the room to put on his clothes and make a light. Day, states, that while he was at or near the door, he discovered a person endeavoring to escape, within a few feet of him; that he snapped his gun at him twice, without knowing who it was, but at the instant of snapping a second time, the light of a candle, lit by McLaren, reflecting on the door at which he stood, he discovered the person to be the plaintiff. He testified to conversations held with McLaren afterwards about the discovery—and in this he is contradicted by McLaren.

Other evidence was given tending to show that the plaintiff was at his residence, at the time he was stated by Day to have been seen by him. Circumstances were also testified to tending to impeach the credit of Day, and others tending to support it. The evidence of McLaren was also impeached by facts and circumstances proved at the trial. A great number of witnesses were examined who testified to facts tending to prove that there could not have been in the building at the time of the fire more than a third of the quantity of manufactured tobacco testified to by Kyle. Several of these were at the fire and looked into the basement of the building where the tobacco was stated to be stored, and express the belief that there was less than half the number of boxes stated in the account of Kyle; others, and a very large number, both tobacconists and others, who had witnessed the burning of buildings containing manufactured tobacco, where the fire was greatly more intense than at the building in question, testified to facts tending to prove that manufactured tobacco in boxes, could not have been entirely consumed by the fire; they expressed their opinion founded on experience, that the tobacco would not have been burned more than one or two inches into the mass, and that the remains of each box would be got out in one mass, except where it had been broken by falling timbers or other external force. It appeared that what remained after the fire, did not exceed in quantity what would be in the opinion of the witnesses the remains of from seventy-five to a hundred boxes. Not one of the witnesses who saw the remains of the tobacco at the fire in question, thought it possible, that there could have been more than one hundred and fifty boxes of manufactured tobacco in the building.

One witness on the part of the plaintiff testified that at a late fire, where a building occupid by him was burned, he was of opinion that some manufactured tobacco in boxes had been entirely consumed. He supposed from what he heard from a clerk of his, that there were 100 boxes in the building, and the remains would not weigh more than thirty. At the same time he showed, on cross-examination, that there could not have been sixty boxes in the building—and how much had been carried away before he saw the remains he could not tell. What he saw, was what remained some ten days after the fire.

Other witnesses were examined touching the value of the presses, both wooden and iron, the cutting machine, shed, &c., and their testimony showed that the several articles could not be worth, when new, more than one half the amount sworn to by the plaintiff.

It was proved by McLaren that the plaintiff kept his books at his dwelling, and the only book of any sort kept at the factory, was kept by McLaren himself, and that was a sort of miscellaneous blotter, in whch, however, but few entries were made, and those having no relation to the purchase or sale of tobacco, and furnishing no means by which the stock on hand could be ascertained, nor even an entry affording any information which could be of service in ascertaining the loss or damage, or what articles were on hand before the fire.

This summary of the evidence is all that is deemed material to be stated; it shows that there was evidence on the various issues, the weight and credibility of that evidence were for the consideration of the jury.

After the close of the evidence, the court gave to the jury the following nine instructions :

1. The condition annexed to the policy requiring notice of loss to be given forthwith, only requires such notice to be given with due and reasonable diligence under all the circumstances of the case.

2. If the jury believe from the evidence, that at the time the plaintiff gave notice of his loss under the policy read in evidence, the St. Louis Insurance Company made no objection to receiving it, or did not object because the same was not given in time, and if said company, after the notice was given, employed counsel, to attend and who did attend to the taking the proof of the loss in question—if these facts appear from the evidence, they amount to a waiver on the part of the Insurance Company of any objection or defect in said notice, or as to the time it was given, if any such objection or defect existed.

3. The condition of the policy requiring the notice and proofs of loss, are to be construed strictly against the St. Louis Insurance Company, in this action, and if the jury believe from the evidence that the said company made no objection to the notice or proofs of loss, but refused to pay the loss on other and different grounds, the jury is authorized to find that such objections were waived.

4. If the Insurance Company intended to rely on any defect in the proofs of loss, they should have apprized the plaintiff that the proofs were defective, so as to give him an opportunity to supply the defect before it was too late; and if the jury believe from the evidence that they neglected or omitted to apprize the plaintiff that his proofs of loss were defective, their silence is to be considered as a waiver of any defect in the proofs.

5. By the term "false swearing," as used in the conditions of the policy, is meant an attempt to defraud the company by swearing intentionally and with bad motives, to the existence of property which the insured had never lost, or by greatly overcharging the property which had been destroyed, or by not acknowledging that which had been saved, or the statement of any material and substantive facts, or the omission to state material facts in the knowledge of the assured with intent to defraud or mislead the assurers.

6. Mistakes in the description of articles destroyed, if not intentional or designed to mislead or defraud the other party are not material, and do not make out the charge of false swearing or fraud.

7 As to the estimates of the value of the articles mentioned in the plaintiff's proofs of loss, the rule of law is, that the over valuation (in order to ground a defence to the recovery on the policy and defeat the plaintiff's action,) must be made by the plaintiff fraudulently and with a design, to deceive the defendants—an over estimate of some articles, if made innocently and mistakenly, without fraudulent intent, is no bar to the plaintiff's recovery of the actual loss which he sustained by the fire.

8. Under the issues joined on the 15th and 16th pleas, the jury must be satisfied beyond all reasonable doubt that the plaintiff set fire or caused the same to be set, to the building and property destroyed, before they can find those issues for the defendant, and unless the jury believe from the evidence that the plaintiff did set fire or cause fire to be set to the building and property destroyed, they must find the issues under the 15th and 16th pleas for the plaintiff.

9. If the finding of the jury should be for the plaintiff, the measure of damages is the value of the property destroyed, not exceeding $6,000, with interest at the rate of 6 per cent. from the time payment was demanded after the lapse of sixty days after the loss.

Exceptions were taken to these instructions, and each of them by the defendant.

The defendant asked sixteen instructions. The court gave the third, fifth, ninth and fourteenth, which are as follows :

3. Unless the plaintiff did before the commencement of this suit, deliver to the defendant a par-

ticular account of the articles lost or damaged by the alleged fire, signed with his own hand, accompanied by his oath or affirmation declaring the said account to be true and just, showing also whether any and what other insurances had been made on the same property, what was the whole value of the subject insured, in what general manner (as to trade, manufacture, merchandize or otherwise,) the buildings containing the subject insured and the several parts thereof were occupied at the time of the alleged loss, and who were the occupants of said building, and when and how the fire originated, the jury ought to find for the defendant the issues on the 8th and 9th pleas.

5. In determining the question, whether the account and statement given in the evidence is a compliance with the conditions of the policy, the jury is to consider only the account and statement sworn to by the plaintiff, and no defects therein can be supplied by the affidavits of Robert McClaren and Thomas Day—the said affidavits are not, nor is either of them, evidence of any fact therein stated.

9. The affidavits of McLaren and Day taken before Justice Carr—the testimony of the same witnesses and of Ezekiel Day, taken before Justice McKinney, are not, nor is either of them evidence in this case of any fact therein stated, and they are excluded from the consideration of the jury, for every purpose except that of deciding on the credibility of the persons respectively by whom they were made.

14. If the jury find from the evidence, that at the time of making the affidavit by the plaintiff and read in evidence, he knew by whom said building was set on fire, then he was guilty of false swearing within the meaning of the 10th condition of the policy.

It appears from the bill of exceptions that the 10th, 13th and 15th instructions asked by the defendant were given with modifications by the court—but it does not appear whether the alterations were of a formal or substantial character. The instructions as copied on the record, are as follows:

10. Unless the jury find from the evidence, that the account and statement sworn to, and given in evidence by the plaintiff, exhibits a particular account of the articles lost or destroyed by the alleged fire, and also shows what was the whole value of the subject insured, or that the plaintiff had it not in his power to give a more particular account of said property, the issues on the 8th and 9th pleas ought to be found for the defendant.

13. If the jury find from the evidence that the plaintiff in the affidavit sworn to and read in evidence, did not state truly as far as he knew at the time of making said affidavit, when and how said fire originated, then he was guilty of false swearing within the meaning of the 10th condition of the policy.

15. If the plaintiff has wilfully and untruly stated any fact in the account and statement exhibited by him, or has been guilty of any misrepresentation or concealment with intent to deceive or defraud the defendant touching the number, quality, quantity or value of the articles lost or destroyed by the alleged fire, or in the building at the time it was consumed, or the loss of his books or any other matter required to be shown by the 9th condition of the policy, he is guilty of fraud within the meaning of the 10th condition of the policy.

The remaining instructions were refused *as prayed*, and exceptions were taken to the refusal of those numbered 1, 2, 4, 6, 7, 8, 11, 12. They are as follows:

1. Unless the jury find from the evidence, that the plaintiff did as soon as practicable after the alleged loss, give notice in writing thereof to the defendants, then he has not complied with the 9th condition of the policy and the issues on the 7th and 22d pleas ought to be found for the defendant.

2. If the jury find from the evidence that the plaintiff was at the time of the alleged loss in the city of St. Louis and an inhabitant thereof, and had knowledge of said loss early in the morning the 1st of April, 1845, that the defendants then and ever since kept their office and place of business in said city that the same was open for the transaction of business each day—that no notice in writing of said loss was offered or delivered to the defendants, nor to any of their officers or agents until the evening of the 5th of April, 1845, then the jury ought to find for the defendant on the issues

joined on the 7th and 22nd pleas of the defendant, unless the jury find that the plaintiff was prevented from delivering said notice at an earlier time without fault or negligence on his part.

4. If the jury find that the paper given in evidence as signed and sworn to by the plaintiff, does not exhibit both a particular account of the articles lost or damaged, and what was the whole value of the subject insured, it is not a compliance with the 9th condition of the policy, and the issues joined on the 8th and 9th pleas ought to be found for the defendant.

6. The account and statements of the plaintiff read in evidence, although sworn to by him and delivered to the defendants is not a compliance with the 9th condition of the policy, and the issues on the 8th and 9th pleas ought to be found for the defendant.

7. If the jury find that the account and statement sworn to by the plaintiff and exhibited in evidence, does not contain as particular an account of the articles lost or damaged by the alleged fire, as the nature of the case admitted, and also what was the whole value of the subject insured, the issues on the 8th and 9th pleas ought to be found for the defendant.

8. It devolves on the plaintiff to prove that the account sworn to and given in evidence by him is as particular an account of the articles lost or damaged by the alleged fire as the nature of the case would admit,—that the articles mentioned in said account were contained in the building described at the time of the alleged fire,—that all of his books and accounts were consumed in said building—that the list of goods in said account and the value thereof is true and correct—that the plaintiff was the sole occupant of said building and that it was used as a tobacco factory only at the time of said alleged loss, and the affidavits of *Robert McLaren* and *Thomas Day* are not evidence of any of said facts so to be proved.

11. Unless the jury find from the evidence that the account and affidavit sworn to and given in evidence by the plaintiff, exhibits a true account of the articles lost or damaged by the fire and the value thereof, or that he could not furnish a more correct account, and had good reason to believe that the said account was correct, then the jury ought further to find the plaintiff guilty of false swearing within the meaning of the 10th condition of the policy.

12. Unless the jury find from the evidence that all the books and accounts of the plaintiff were consumed by the alleged fire, or that the plaintiff had good reason to believe that said books and accounts were so consumed, they ought to find that the plaintiff is guilty of false swearing.

After verdict and in due time, the defendant moved for a new trial, assigning as reasons, that the verdict was contrary to law, contrary to evidence—that the court misdirected the jury and refused to give proper instructions. This motion was overruled and exceptions taken.

GEYER, *for Appellant.*

1. The proposals and conditions attached to the policy form a part of the contract, and have the same effect as if contained in the body of the instrument. They are conditions precedent, which must be complied with by the insured, at his peril; his right to indemnity in case of loss depends upon a due compliance with those conditions. Duncan vs. Fire Ins. Co., 6 Wend., 488; Ellis on Ins., (2nd. Law Lib., p. 12.) A condition not complied with, defeats the policy, whether it be material to the risk or not, and whether the non-compliance be with or without the act or privity of the assured. 1 Phil. Ins., 410; Jefferson Ins. Co., vs. Cofheal, 7 Wend., 72; Fowler vs. Etna Ins. Co., ib,. 270; Harris vs. Ohio Ins. Co., 5 Ham., Ohio R., 466; Levy vs. Bailey, 7 Bing., 349; Worsly vs. Wood, 7 J. R., 710; 2d Greenlief's Ev., sec. 406. The stipulation that the insured shall, upon any loss, forthwith deliver an account thereof, and procure a certificate, &c., is a condition precedent, the performance of which must be particularly alleged and strictly proved. 2d Greenleaf's Ev., sec. 406; Marshall on Ins., 807, 811; Worsley vs. Wood, 7 J. R., 710; 3 Kent's Com., 372, 375. As the knowledge of all the facts necessary rest with the assured, he is bound to furnish a true statement, upon which he is to stand or fall. Ellis on Ins. 14, and cases there cited.

It is conceded that there may be in this, as in other cases, an excuse for non compliance with a condition precedent, but where matter of excuse is intended to be relied on, it must be averred, and proved as alleged; in other words the plaintiff must aver either a compliance, or allege a sufficient excuse for non compliance, and in either case the evidence must be according to the allegation. Starkie's Ev., 52; Ughead's case, 7 Coke, 10, a; 1 T. R., 690. An allegation of actual performance is not satisfied by evidence of a discarge or excuse for non performance by act or omission of the defendant. Heard vs. Wadham, 1 Ea., 619; Jones vs. Burkley, Doug., 659; Raum vs. Johnson, 1 Ea., 203; 3 T. R., 590; Smith vs. Brown, 3 Blackf., 22; Phillips vs. Rose, 3 Johns., 392; Harris vs. Marble, 3 T. R., 307; 1 Chitty's Plead., 280; 2 Greenleaf's Ev., sec. 235; Heard vs. Wadham, 1 East., 619.

II. The first instruction given by the court below to the jury, is not justified by the issue nor by the terms of the contract between the parties. The contract imposes upon the insured the obligation, in case of loss, forthwith to give notice thereof in writing to the insurers. Tho declaration avers performance in the very words of the contract, which being traversed, must be proved. See the cases above cited. If the plaintiff intended to rely upon any facts as an excuse for non-compliance, those facts ought to have been stated in a form to enable the court to determine upon their sufficiency, and to admit of a traverse by the defendant—and even if it be agreed that due and reasonable diligence in giving notice, would amount to a compliance, it was error to refer to the jury not only to determine what circumstances were proved, but their sufficiency.

III. Tne pleadings in this case, did not admit of the enquiry whether there had or had not been a waiver by the insurers, of compliance with the 9th condition of the policy. The plaintiff did not allege the existence of any facts to excuse compliance; the defendant therefore had no opportunity to put these facts in issue. On the contrary, the plaintiff averred a strict performance, which being traversed, he was bound to prove it. Besides, if it was allowed to the plaintiff under the issue, to prove matter in excuse of non performance, the facts stated in the instructions, if proved, would not establish a waiver, as supposed. Neither the silence of the defendant when the notice was delivered, the employment of counsel to attend the examination of witnesses, nor the neglect to assist the insurer by their counsel, amounts to a waiver of the 9th condition of the policy. A waiver requires some distinct affirmative act; mere silence is not waiver. Platte on Covenants, 128; Columbian Ins. Co. vs Lawrence, 2 Peters, 53.

IV. The instructions given on the prayer of the defendant below, do not correct the errors of those previously given. It was the duty of the court to have withdrawn the erroneous instructions. Jones vs. Talbot, 4 Mo. R., 299; Hickman vs. Griffin, 6 Mo. R., 37.

V. It was the duty of the court to decide whether the document given in evidence was a compliance with the 9th condition of the policy or not—and as that document does not exhibit a particular account of the articles lost or damaged, and the whole value of the subject insured, nor assume to do so, the 6th instruction prayed by the defendant, ought to have been given. Or if that document did contain what the 9th condition required, it was for the jury to determine upon the facts before them, whether in truth it was what it purported to be, and so the 4th, 7th, 11th and 12th instructions were improperly refused.

VI. The 8th instruction ought to hav beeen given, as prayed by the defendant, because, by the pleas, all the facts mentioned in that instruction are denied in detail, and the affidavits appended being no evidence of the facts on the issues, they remained to be proved by the plaintiff.

VII. The condition of the policy requires that the account and statement to be exhibited by the insured shall be accompanied by an affidavit of the insured declaring the same to be *true* and *just.* It follows, that the account to be rendered should be *correct* as well as particular. It is no compliance with the condition to furnish an account however particular, if it be not correct. The 10th and 11th instructions prayed for by the defendant ought therefore to have been given.

VII. The plaintiff having sworn that it was not in his power to give a more particular description of the articles lost, for the reason that all his books and accounts were consumed in the building aforesaid, was undoubtedly guilty of false swearing within the meaning of the policy, if in

fact his books and accounts were not consumed, and he had no reason to believe that they were. If swearing to a falsehood, where there exists no reason to believe it true, is not false swearing, as the Cirtcuit Court assumed by referring to the 12th instruction—it will be difficult to imagine a case of false swearing.

IX. The condition of the policy required the insured to take an oath when and how the fire originated, as far as he knew or believed. In the affidavit, it is stated by the plaintiff below, that the building was set on fire by some person or persons unknown to him. If this is to be regarded as a compliance with the condition, then it is important to enquire, whether this was stated truly as far as he knew *or believed,* and the 13th instruction asked, proposed to put that enquiry before the jury, which the court erroneously refused to do.

X. Fraud is the allegation of a falsehood or the suppression of a truth; therefore any false statement, misrepresentation or concealment with intent to deceive the underwriters touching the number, quality or value of the articles lost or destroyed, or any other matter required to be stated, is fraud, and if sworn to, false swearing, within the meaning of the 10th condition of the policy; and therefore, the 15th instruction ought to have been given as prayed.

XI. By the terms of the policy, the loss or damage, if any, was to be according to the true and actual value of the property at the time it should happen, and to be paid within sixty days *after due notice and proof thereof in conformity with the conditions annexed.* Interest was not chargable until 60 days after the notice duly given and proof made, according to the 9th and 10th conditions—and did not commence from the time payment was demanded after the lapse of sixty days after the loss—and the jury were directed to charge the insurers.

XII. A new trial ought to be awarded on the merits, and because of the misdirection on the former trial.

Eager & Hill, *for Appellee.*

I. The court ruled correctly on the question as to notice and proofs of loss, and the service of it on the 5th April, four days after the fire, because:

1st. The President and two Directors went to the fire and examined the loss, and ordered plaintiff's servants to save the goods. See Roumage vs. Mich. Fire Ins. Co., 1 Green's R., 110.

2nd. On service of the notice, the Insurance Company acted on it by employing an attorney to attend to the taking of the proofs under the notice, and received the proofs thus taken without any objections, and refused to pay the loss on other grounds than objections to the proofs of loss. Norton vs. Rens & Sav. Ins. Co., 7 Cow., 647; Etna Ins. Co. vs. Taylor, 16 Wend., 401; Lawrence vs. Ocean Ins. Co., 11 Johns. R., 260; Vos vs. Robinson, 9 Johns., 192; Ocean Ins. Co. vs. Francis, 1 Wend., 64; Curry vs. Com. Ins. Co., 10 Pick., 536; Inman vs. West. Ins. Co., 12 Wend., 452.

3d. The acts of the Insurance Company are evidence of performance by plaintiff of the condition requiring the proofs of loss and notice. McMaster & Bruce vs. West. Mut. Ins. Co., 25 Wend., 379; Lawrence vs. Ocean Ins. Co., 11 Johns., 260; 9 Johns., 192; Columbian Ins. Co. vs. Lawrence, 10 Peters; McLaughlin vs. Wash. Co. Mut. Ins. Co., 23 Wend., 527; 7 Cow., 645; Palmer vs. Warren Ins. Co., 1 Story's C. C. R., 360; Hammond on Fire Ins., 107; Catlin vs. Spring. Ins. Co., 1 Sumner, 437; Martin vs. Fishing Ins. Co., 20 Pick., 389.

4th. Conditions in policies of insurance which impose burdens on other parties, will be construed strictly against the Insurance Company. 1 Story C. C. R., 360; 1 Sumner, 437, by Justice Story.

5th. Acts of the President bind the corporation. Ang. & Ames on Cor., 265; 4 Cow., 645; 4 Hill, 160.

II. The court ruled correctly on the question of *false swearing.* The 5th instruction of the court covers the whole subject and no man can imagine a case of false swearing not covered by it. See Ham on Ins., 15; Ellis on Ins., 14; Moadinger vs. Mich. Fire Ins. Co., 2 Hall's N. Y. Reps., 490, where the law is laid down in the very words of the instruction.

III. All the other instructions in the case are embraced in instructions given, or those refused and those given are left in such doubt from the record, that it does not appear how the court ruled. In such cases the judgment must be affirmed.   9 Mo. R., 441; ib., 823.

IV. There are no material defects in the proofs of loss.

V. If any of the instructions are erroneous, the defendants have sustained no injury from them, for the verdict was for the right party on the evidence and law of the case.   8 Mo. R., 337, 70⁻; 6 Mo. R., 301; 7 Mo. R., 419; 8 Mo. R., 224.

NAPTON, J., *delivered the opinion of the Court.*

For the sake of convenience, I will consider the questions presented by the record under three principle heads; first, the sufficiency of the notice; second, the proofs of loss; and third, the instructions on the questions of false swearing and the plaintiffs participation in the arson.

1. The declaration averred that notice in writing was *forthwith* given to the Company, according to the stipulations in the 9th condition of the policy. The proof was, that the fire occurred on the first of April and the notice was given on the *fifth*. The first instruction of the Cou.t was, that the notice must be given with due and reasonable diligence under all the circumstances of the case. The acts required to be performed by the assured are well understood to be conditions precedent, without the performance of which, the plaintiff cannot recover. An averment of the performance is therefore necessary, and the proof must of course sustain the averment. What, then, is meant by the word *forthwith*, as used in the 9th condition of the printed proposals? It cannot mean, that no interval is to elapse between the time of the fire and the giving of the notice—nor can it mean that an unreasonable or unnecessary delay would be tolerated. The construction given to this term in Inman vs. Western F. I. Co. (12 Wendell, 452,) appears to be a reasonable one, and differs in no respect material from the doctrine advanced in the first instruction. *Forthwith* means without unnecessary delay. The notice must be given with *due diligence under the circumstances of the case.* The averment in the declaration, that notice was given *forthwith,* is therefore equivalant to an averment that the notice was given *with due diligence under the circumstances of the case,* and it was only necessary that the proof should sustain the averment. There is no material difference between the instruction as given by the court and the first instruction asked by the defendant. They were both erroneous in leaving to the jury the question of due diligence, but had the issue been found under either or both of these instructions, this error would not have

been prejudical to the judgment, if the facts on the record would authorize the finding.

But the court did not leave the question in this position, but declared to the jury in the second instruction, that if the Company made no objection to receiving the notice, or did not object to it because it was not given in time, and employed counsel to attend to the taking of the proofs of loss, these facts amounted to a waiver on the part of the Company of any objection to the notice, either as to its form, or the time it was given. This instruction, it is manifest, absolved the jury altogether from the necessity of determining upon the question, as to the diligence of the plaintiff. The first instruction was therefore rendered a mere abstraction,— for, if the Company received the notice and acted under it, the second instruction rendered unnecessary all enquiry into the diligence of the plaintiff in giving it. The court extended the doctrine of waiver, which has been applied to the sufficiency of the preliminary proofs, to the notice. There is no doubt abundance of authority to sustain the doctrine, that formal defects in the proofs of the loss may be waived by the conduct of the underwriters. The doctrine is reasonable in itself, and necessary to protect the assured against mere technical obstructions to a recovery, in other respects just and proper. If the formal proofs of interest and loss are defective, it is but fair that the Company should apprize the assured of their objections. Such defects might be cured, if the party was apprized of them. It would therefore be a virtual deception practised on the assured, if the underwriters should be permitted to receive these papers without objection, and after placing their objections to paying the insurance upon other grounds, turn round at the trial, and attempt to avoid their liabilities by technical objections to the proofs furnished them. But the want of a timely notice is another matter. Whether the Company are silent, or make objections, cannot alter the right of the parties. If the notice is too late, there is an end to the matter. The want of such a notice cannot be supplied. Of what avail would it be to the assured to be told that the notice was insufficient? that it was too late? How could the silence of the Insurance Company be construed as an admission that the notice was in time? It was not the duty of the Company to make any formal objection to the want of notice. It was made the duty of the assured to give the notice, and neither silence on the part of the Company, or positive objections, would alter its character or sufficiency.

In the case of McMasters & Bruce vs. the West. Ins. Co. (25 Wend., 379,) the Judge submitted to the jury two questions; first, whether there

had been an unreasonable delay in giving the notice; and second, whether the Insurance Company had by their acts waived the preliminary proof.— In that case, the fire occurred on the *first* of July and the notice was not given until the 13th; but it appeared that negotiations had been on foot between the two parties from the time of the fire. The question of delay was not confounded with the waiver of preliminary proofs. The jury passed upon both questions, and although the question of diligence was considered one of law, when the facts were found or agreed upon, yet the appellate court regarded the verdict of the jury under such instructions as special, and proceeded to determine the case accordingly.

I am not willing to say that the notice in this case was not in time. The delay was so incondsiderable that very slight circumstances would be sufficient to excuse it. Courts have uniformly given a liberal construction to these conditions in policies of insurance. It would be going too far to say that a notice given in four days after the fire would, under any circumstances, constitute a notice *forthwith*, within the meaning of the 9th condition. There were, however, facts in evidence which might have satisfactorily accounted for the delay in this case. The plaintiff received an injury, either at the fire, about which the present controversy has arisen, or some other fire happening at that time, and was confined for several days to his house. This circumstance alone might make the delay a reasonable one, and the fact that the Company acted under the notice, would be evidence that it had been productive of no inconvenience or injury to them. But the jury did not pass upon the facts, on this view of the case. The court told the jury that the silence or failure to object, was an absolute waiver of defects in the notice, both as to time and form. Upon this construction of the law, a failure to give notice for six months would not affect the rights of the assured, unless the underwriters should positively refuse to receive the notice or take some other unequivocal steps to indicate their determination to resist the payment on this ground. Such a doctrine would be in fact *implying* a new contract between the parties, from the mere inaction or silence of one party.

2. The third and fourth instructions, so far as they related to defects in the proofs of loss, were correct. Formal defects in the preliminary proof, which may be supplied, if objections are made by the underwriters in time, may well be regarded as waived, where the underwriters put their refusal to pay distinctly on some other ground. Nor do I perceive any objection to such evidence on the ground that the pleadings involve a different issue. It is merely evidence of a performance. It is not the case

of a substitution of a new contract for the old one; it is not an excuse for non-performance, by the prevention or discharge of the defendants; but it is evidence of performance. The party for whose benefit the condition is inserted, is presumed to understand its import, and his acceptance is the strongest evidence that the act agreed to be done has been done according to contract.

In the numerous cases cited, in which this doctrine of waiver has been distinctly asserted, I do not discover that any objection has been suggested to the admissibility of such evidence on account of the form of the pleadings and the character of the issues made. It is true, that the actions are usually assumpsit, and the cases tried on the general issue, but an averment of the performance of a condition precedent is as sesential in the action of assumpsit as in covenant.

In the case of McMasters & Bruce vs. Westchester M. I. C., heretofore cited, the pleadings are not stated, but it is to be inferred, that the declaration was in the usual form, and the Judge left it with the jury to say, whether the acts of the underwriters had not waived any objections to defects in the preliminray proof. In the case of Etna Fire Ins. Co. vs. Tyler, (in the Court of Errors of N. York,) the Chancellor declared the law to be well settled, that defects in the proofs of loss might be waived by the silence of the underwriters, but suggested that the question of waiver had not been submitted to the jury. "The difficulty is," he observed in the course of his remarks on the point, "that the question of waiver was not raised at the circuit, so as to give the underwriters an apportunity of showing that they had in fact insisted upon the want of a proper certificate as a necessary part of the preliminary proofs—the court having decided that the certificate produced was sufficient."

The objection of the Chancellor was, not to any defects in the declaration, excluding proof of waiver, but that the circuit Judge held the certificate sufficient, and never permitted the jury to pass upon the question of waiver. It is clearly inferrable, that, in his opinion, no averment of waiver in the declaration was necessary or would have been proper. In the case of Davis vs. N. H. Ins. Co., (7 Cow. R., 462,) the plaintiff averred a performance of the 9th condition of the policy, and the proof was that the President of the Company waived a compliance. The court held, that the President had no authority to do such an act. By the act of incorporation, the President had no such power, and no such power had been given by any bye-law. The company therefore were not considered bound. It was admitted, however, that if the Board of Directors had dispensed with the condition, the corporation would have been bound.—

Now, it is obvious, that the investigation of the question of authority, was totally unnecessary, if, under the pleading, a waiver of any sort was inadmissible. The case of Martin vs. Fishing Ins. Co., 20 Pick., 389, is another case tending very strongly to show the opinion of the profession on this point. That was an action of assumpsit on a policy. No preliminary proof was made, except an abandonment, which was not accepted, and a demand of payment of the loss, and a written agreement of reference, and the testimony of one of the plaintiff's witnesses that the defendant had always resisted the right of recovery on account of the unseaworthiness of the vessel. The Supreme Court said, "The court very properly left it to the jury to determine, whether the defendants had not waived their right to any further proof, or whether it was not evidence that they had such proof."

In these cases, the allegations in the declaration are not stated, but it is to be presumed, that if there had been any variation from the usual form, that fact would have appeared. The evidence of a waiver was uniformly admitted under the general issue in assumpsit, and the declaration in this special action on the case must necessarily contain the same averments which would be essential in an action of covenant brought upon a similar instrument, under seal.

3. The principal defence in this case was based upon the alleged *false swearing* of the plaintiff, in his preliminary proofs of loss, and his alleged participation in the burning of his factory. To sustain the latter charge, it was obviously essential that the first should be established. For, it would require a stretch of credulity, not ordinarily to be found, to be convinced that the plaintiff set fire to a building containing nearly twelve thousand dollars worth of his property, when the insurance only covered six thousand dollars. The main controversy, then, must have been as to the truth of the plaintiff's statement of the amount and value of the property in the building at the time of the fire, and his statement that "he was unable to give a more particular description, for the reason that all his books and accounts were consumed in the building." Accordingly we find on the record, that a mass of testimony was brought to bear upon both these points. It was proper that the instructions upon these points should be clear and satisfactory. The instructions given, at the plaintiff's instance, on the question of false swearing, have already been copied; their propriety is not questioned. The only objection that could be urged to them is, perhaps, that they are too *abstract* in their character, and do not, with sufficient precision, direct the jury to the exact matters controverted. But the instructions asked by the defendant were also

given. It is stated that they were modified, but to what extent does not appear. We must presume that the alterations were immaterial. The 12th instruction asked by the defendant was refused. That instruction directed the jury to find the plaintiff guilty of false swearing, if they believed from the evidence that all the plaintiff's books and accounts were not consumed in the alleged fire, or that the plaintiff had no reason to believe that such was the fact. The plaintiff, in his proofs of loss, to which he made oath, stated that he could not give a more particular description of the property consumed, *for the reason* that all his books and accounts were consumed in the fire. The plaintiff may have intended to assert that all his books and accounts, which at the time of the fire were in the factory, had been consumed, and therefore no moral guilt could attach to this statement, nor any fraud be perpetrated on the Company, if the statement was substantially true, although some of the plaintiff's books and accounts, kept at another place, were not consumed. Still, it is obvious, that the statement of the plaintiff carries with it the implication that the books and accounts which had been consumed in the fire had a tendency to explain the amount of property contained in the building; and if they had no such tendency, the statement was calculated to create a false impression. There was evidence on both sides of the question, of which the jury were the judges. The 12th instruction, as it was asked, was objectionable; it might have been given with the modification we have suggested.

The instruction in relation to interest was erroneous. The insurance was not payable until sixty days after notice and proof of loss.

The case must be remanded, because of the error committed by the court on the question of notice. The facts have not been passed upon by a jury in such a shape as to enable us to determine, as a question of law, whether there was due diligence or not. We have not ventured to form, much less to express, any opinion of the case upon its merits. We have had time barely to glance over the volumnious mass of testimony spread upon the record. The case is an important one, not only because of the considerable amount of property involved, but because it involves imputations upon the integrity of the plaintiff, of the most serious character. If the imputations be unfounded, the plaintiff will lose nothing by delay—for truth, though sometimes slow in its progress, rarely fails to overtake error in the long run. If they are true, it is but right that the Insurance Company should have another opportunity of establishing them, there having been a misdirection at the former trial.

The other Judges concurring, the judgment is reversed and the cause remanded.