Bosworth, J.
The first point made on the appeal is, that the court erred in allowing proof that notice of the fire was given the day after its occurrence, and in overruling the objection of the defendants’ counsel to such evidence.
The policy required that the assured, on “ sustaining loss or damage by fire, should forthwith give notice thereof to the company.” The fire occurred in the night of the 20th of May, 1852. The complaint avers, “ that as soon as possible after said fire, that is to say, on the 24th of May, 1852,” the plaintiffs gave notice of the same to the defendants. The answer denies *567 “ that the plaintiffs did, as they aver in their complaint, and as they were bound to do by the terms of said contract, notify them of said loss and of said fire, but, on the contrary thereof, they failed to give the defendants any notice whatever of said fire, until several days after its occurrence.”
It will be seen that the answer treats the complaint, as having, in substance, averred, that notice was forthwith given of the loss; denies the truth of such allegation, and affirms that, no notice whatever was given of said fire, until some days after its occurrence.
When the plaintiffs offered to prove that notice was given to the agent of the company, at their office in this city, where the policy was effected, on the morning of the 21st of May, the evidence was objected to. No objection was made as to the mode of giving it, or that it was not given at the proper place, nor that the notice given that morning was not sufficient, without other or further notice of the loss. The objection taken was, that the plaintiffs, by their complaint, had precluded themselves from proving that any notice had been given, except on the 24th of May. We think the particular objection made to the admission of the evidence untenable. The complaint averred, that notice was given as soon as possible, to wit, on the 24th of May. The answer treated it as an allegation that notice had been given forthwith, and denied that it had been given forthwith by the plaintiffs, “ as they aver in their complaint.” Not content with this, it proceeds to assert that, on the contrary, the plaintiffs “ failed to give the defendants any notice whatever of said fire, until several days after its occurrence.” The evidence objected to was directed to this averment, and tended to prove that notice was not only given as soon as possible, but forthwith.
No point was made that the notice actually proved was insufficient, if evidence of it was admissible under the pleadings. The court was not asked to charge the jury that the notice was given so late as to exonerate the defendants from liability, or that it was insufficient, in any respect. The only point made was, that it was not competent for the plaintiffs, tinder the pleadings, to prove that notice was given, on the *568 morning after the fire. We think the objection was properly overruled.
The second point taken is, that the court erred in refusing to receive evidence of the conversation between the parties, at the time the policy was made, as to the night watch to be kept on the premises,—and that, by the express terms of the agreement, the “ night watch” was to have the care and watching of no other premises at the same time, but that he was to be the exclusive watch of the plaintiffs upon their premises.
The answer avers, “ that in and by the aforesaid contract or policy of insurance, it was stipulated and agreed that the plaintiffs should, at all times during the continuance of said policy, keep and maintain a night watch upon the premises described therein, and containing the property which was the subject matter of the said insurance,” and alleges that they did not do so.
The answer did not allege, that any agreement was made different from that evidenced by the policy. The defendants ■did not offer to prove, that by any established or known usage, the term “ night watch” was understood to impose any duties in addition to, or different from, those plainly indicated by the contract described in the policy, or by the natural meaning of the words by which it was described. If the object of the evidence was to vary the necessary legal effect, or the terms of contract, contained in the policy, it was properly rejected.
The only remaining point taken, brings under consideration the only part of the charge to the jury which was excepted to by the defendants.
The court charged as requested, that the obligation of the plaintiffs to keep a night watch on the premises during the continuance of the policy, was a condition precedent to the liability of the defendants, and to entitle the plaintiffs to recover, they must prove a literal performance of the condition. To charge as secondly requested, the court refused, but “ charged the jury- that, if they found upon the evidence that the plaintiffs employed Head to act exclusively as a night watch upon the premises in question, and that he was a competent and proper person to be employed for that purpose, and that he did *569 keep exclusively on the plaintiffs’ premises, in the faithful performance of his duties as night watch, and they were ignorant of the engagement which he had made to Perrine, Patterson & Stack, then his having made the engagement with them which he testified he made, and having rendered for them only such services as he testified he rendered, would not be a non-compliance with the conditions which would preclude a recovery, by the plaintiffs in this action.” To this part of the charge the defendants excepted.
Mead testified that he was “never off the plaintiffs’ premises one night.” One of the firm of Perrine, Patterson & Stack told Mead “ to keep an eye on their premises, as he was going back and forward, and he would make it all right.” He “ agreed to watch the premises, going backward and forward.” He did not go into their yard. He could see in the yard without going off plaintiffs’ premises. He could see over the fence almost all the way. He could get on barrels and look over it. It did not prevent his doing his duty to the plaintiffs. He always kept on the ground of the oil factory.
This summary of Mead’s testimony, is his version of what he agreed to do, and did do, for Perrine, Patterson & Stack.
The jury have found that he was a competent night watch, that he was employed to act exclusively for the plaintiffs, that he kept exclusively on their premises, faithfully performed his duties, and that the plaintiffs were ignorant that he had agreed to occasionally look into another and adjoining yard, which could be seen from the yard of the plaintiffs.
It is contended that a warranty must be literally complied with. The warranty was that the plaintiffs, during the policy, would “keep and maintain a night watch on the premises.” They did keep and maintain one there every night, who, on no occasion, left the premises. They did not agree that he should never look off of them, or on no occasion be dozing or fall asleep. The spirit of the warranty is, that there should be a competent night watch kept there, and one who might be confided in for the faithful performance of a night watch.
The rule is said to be, that “ while on the one hand a literal fulfilment of the warranty is required, yet, on the other, it is no less certain, that nothing beyond a bare and literal fulfil *570 ment can be required. A warranty will not be extended, by construction, to include any thing not necessarily implied in its terms.”
Thus, in Hyde v. Bruce (3 Doug. 213), where there was a warranty, “ that the ship should have twenty guns,” and it appeared that, though in fact the ship had twenty guns, yet she had only twenty-five men, a number quite short of the necessary complement for twenty guns, Lord Mansfield held, that this'warranty did not imply that she should carry a competent number of men to work the guns, and, therefore, as there was no ground to impute fraud, the warranty had been sufficiently complied with. (Bond v. Nott, Cowp. 601; Bean v. Stupart, Doug. 11; 1 Arnould on Ins., § 215, p. 588.)
In Kemble v. Rhinelander (3 J. C. 134), Kent, J., says, “ A warranty must be literally complied with, but this strict compliance ought to operate in favor of, as well as against the assured, whenever he can bring himself within the terms of it.” The plaintiffs literally did all'they agreed to do. They kept and maintained a night watch on the premises every night, including that of the fire. He was competent, and faithfully performed his duties. The terms of the warranty do not necessarily imply an agreement, that the night watch employed should not do, what Mead did for Perrine, Patterson & Stack. We think that the'objections made and exceptions taken, are not such as to justify us in disturbing the verdict.
Judgment must be entered for the plaintiffs on the verdict.