DAVID GIBSON & CO. v. THE FARMERS AND MECHANICS' IN-
SURANCE COMPANY.

The defendant refused to pay the insurance on a steamboat lost by fire, on the ground that two competent watchmen were not employed, and at the time of the accident no watchman was on duty. The plaintiff says, that by agreement one watchman was waived, in which respect the policy ought to be reformed; but that in fact two were employed and one was on duty at the time. The testimony was to the effect, that while the watchmen had gone to their supper, on the top of the river bank, the boat took fire and was burned; also, that it is the usage for the watchmen to get their meals on shore when the steamboat is in port. At Special Term the judge instructed the jury to inquire whether one watchman was waived by the agreement or not; if not, whether two watchmen were employed, and one was on duty at the time, within the fair intent and

meaning of the policy. A verdict was returned for the plaintiffs, and the defendant's motion for a new trial was overruled.

*Held*, that having due regard to the circumstances and the purposes of the stipulation contained in the policy of insurance, the charge to the jury was correct, and the motion for a new trial should be overruled.

RESERVED FROM SPECIAL TERM.—The facts appear in the opinion.

*Lincoln, Smith, Warnock & Stephens*, for plaintiffs.

*Long & Kramer*, for defendant.

HAGANS, J. This is a motion for a new trial, reserved on the following facts:

The plaintiffs had a risk in the Boatman's Insurance Company, on the steamboat Louisiana, for $3,000, which contained a printed clause providing, "that while in port or laid up, at least *two* competent watchmen shall be employed, one of whom shall be on duty at all times," and also a written clause, "one watchman waived." That company becoming insolvent, the defendant took the risk exactly as it was in the Boatman's Insurance Company, as is alleged, except only as to the amount, which is $2,000; and for this purpose the policy in the Boatman's Company was sent to the defendant to be exactly copied. It seems, however, that the defendant omitted, in the policy sued on, the written words "one watchman waived," and on this the controversy turns.

The boat was lost while lying up at Cairo, and the defendant refused to pay, on the grounds that there were not *two* competent watchmen employed, and that at the time, and immediately before the disaster, no watchman whatever was on duty.

The plaintiffs asked that the policy sued on be reformed, if necessary, according to the alleged agreement that "one watchman was waived;" but claimed that in fact they employed two competent watchmen, and that one of them was on duty at the time.

It appeared in evidence that the plaintiffs employed one

watchman as such, who had been on the river fifteen years; and also the clerk, J. L. Eaton, who was a man of large experience, to assist him. While they were gone to supper, at their boarding house, on the top of the river bank, in daylight and in sight of the boat, the boat took fire and was burned. No fire was on the boat, and no cooking; but the watchmen slept there. There was evidence to the fact that it was always the usage among steamboat watchmen to get their meals off the boats they had in charge while lying up. No cooks were kept on board, and no cooking done, because it was safer. Sometimes a watchman would speak to a watchman on a neighboring boat to keep an eye on the boat until his return.

The court charged the jury to inquire whether "one watchman was waived" by the agreement of the parties. If not, they were to determine whether two good and sufficient watchmen were employed, and whether one of them was on duty at the time; that the policy required that they should be good and prudent men, acquainted with steamboats and steamboating, and that one of them should be on duty at all times; that the law did "not require that the watchman should be guilty of no want of care or inattention to his duties; but that he should be on duty within the fair intent and meaning of the policy; and it was for the jury to say, under the circumstances of the case, whether one watchman was on duty at the time of the loss or not, and whether it was unreasonable for the watchmen to step on shore to get their supper under the circumstances and a departure from duty. Was it a thing unusual under the circumstances?"

The judge below then proceeded to quote from the opinion of the court in *Hovey* v. *The American Mutual Insurance Co.*, 2 Duer, 569: "It is contended that a warranty must be literally complied with. The warranty was that the plaintiffs, during the policy, would "keep and maintain a night-watch on the premises." They did keep and maintain one there every night, who on no occasion left the premises.

They did not agree that he should never look off them, or on no occasion be dozing or fall asleep. The spirit of the warranty is, that there should be a competent night-watch kept there, and one who might be confided in for the faithful performance of a night-watch."

The judge also quoted to the jury from the opinion of Shaw, C. J., in *Crocker* v. *People's Mutual Fire Insurance Co.,* 8 Cush. 79: "The stipulation, 'a watchman kept on the premises,' inserted, as it is, in the body of the policy, immediately after the description of the property insured, is in the nature of a warranty, and must be substantially complied with by the assured. But the terms are not explicit as to the time and manner of keeping a watch. It does not stipulate for a constant watch. It therefore requires construction as a matter of law to determine what is meant in this policy by keeping a watch. It relates to a factory—to its safety against fire—and this depends upon a habit or practice in this respect and upon the fact whether that usage has been followed. Where there is an express stipulation that a thing shall be done, but the contract is silent as to the time and manner, the law holds that it must be reasonable in this respect, having regard to the object and purpose of the stipulation—in this case to the safety of the building. If it is done in a manner in which men of ordinary care and skill in similar departments manage their own affairs of like kind, this is one strong ground to hold it reasonable and to warrant the admission of evidence of usage."

The judge at Special Term then proceeded with his charge: "Now, if the jury shall find that it was the agreement of the parties that one watchman should be waived, then they might well find that the plaintiffs had performed their duty in this behalf; but if they should not so find they would determine whether there was one watchman on duty at the time of the loss, within the fair intent and meaning of the policy. Were they on duty as is usual, and was it unreasonable for them to step off the boat for a few minutes to get their supper, under the circumstances detailed to

you in the evidence? Was this such a performance of their duty as a prudent man having it in charge would have adopted?"

No exceptions were taken to this charge, but the defendant asked the court to charge the jury, that "if two watchmen were by the terms of the policy to be employed, and the jury shall find that one of such watchmen was not waived, then the defendant has the right to the presence of one of such watchmen on or about the boat at all times;" which charge the court gave, subject to the general charge.

The jury brought in a verdict for plaintiffs for the full amount of the policy, and defendant made a motion for a new trial, which was reserved.

There is nothing in the verdict or in the record to determine whether the verdict was founded on the issue, whether the policy should be reformed by inserting "one watchman waived," or whether the jury proceeded on the ground that there were actually two watchmen employed, and that one was "on duty at all times," within the fair intent and meaning of the policy. The case was left to the jury under this double aspect. It is not contended that, if in fact the policy should be reformed, the verdict was wrong. On the contrary, it was admitted at the trial that plaintiffs were entitled to recover. The defendant sought a direction to the jury only on the other aspect of the proof; and it is upon this view that the questions made arise.

It is not contended that there were not two competent watchmen employed by the plaintiffs, within the fair intent of the policy. The main point made by the defendant's counsel was as to the meaning of the words "one of whom shall be on duty at all times." The defendant evidently regarded them to mean "one of whom shall be *on or about the boat* at all times," as appears from the special charge asked. And certainly the defendant can not take much by the exception, for the judge gave the charge as asked, qualifying it by the general charge.

It is contended that the judge erred in submitting the

question, under the evidence, whether the watchman performed his duty as a prudent man having a boat in charge would have adopted. We see no error in this.

But it is said, that by the language of the policy it was intended by the parties to the contract that one watchman should be on board the boat at all times, and that that was the very reason of making the provision for two watchmen. If this were so it would have been easy to have inserted that language in the policy. The term, "one of whom shall be on duty at all times," does not necessarily imply that one of the watchmen shall be on the boat at all times. There is nothing inconsistent with the duty of the watchman on duty that he should take his meals off the boat, having due regard to the circumstances of the case, or that he should do any other necessary thing, not inconsistent or unreasonable, in relation to the performance of his office. He may as well be on duty, in this view, off as on the boat, and as strictly comply with his obligations under the policy. And where the contract is silent as to the time and manner, "the law holds that it must be reasonable in this respect, having regard to the purpose and object of the stipulation;" in this case to the safety of the boat.

We think the directions to the jury were right, and that the motion for a new trial should be overruled.