Badger vs. The Phœnix Insurance Company of Brooklyn.

*April 27 — May 11, 1880.*

Fire Insurance.　*Waiver of proofs of loss.*

1. Where a fire insurance policy requires the assured to furnish written proofs of the loss, signed and sworn to by him, as soon thereafter as possible, and to produce a certain certificate of a magistrate or notary, and also requires him, at the option of the company, to submit to an examination under oath by an agent of the company, etc., if the assured, before furnishing the formal proofs, submits to an examination under oath required by the insurer, and subscribes the statement thereof, which is then delivered to and received by the insurer's agent, without any demand thereafter made for the formal proofs (including the magistrate's certificate), this is evidence upon which the jury may find a *waiver* of such proofs.

2. The policy in such a case makes the loss payable "sixty days after the proofs of the same required by the company shall have been made by the assured and received at the office in Chicago, and the loss shall have been ascertained and proved in accordance with the terms and provisions

of the policy." *Held,* that if the examination was a waiver of the other proofs, the loss became payable at least at the expiration of sixty days from the time when such examination, subscribed by the assured, was duly delivered to the insurer; and where, at the request of the insurer's agent, such delivery was made to him at the place where the property was situated, and possession was retained, this was a waiver of the delivery at Chicago.

APPEAL from the Circuit Court for *Winnebago* County.

Action upon a policy of insurance against loss by fire. The plaintiff appealed from a judgment of nonsuit. The case is thus stated by Mr. Justice *Taylor:*

"The only grounds alleged in this court in justification of the nonsuit are: *first,* that the plaintiff failed to show that he had made and delivered proofs of loss as required by the terms of the policy; and *second,* that if such proofs were furnished, the action was prematurely brought.

"Upon the subject of proofs of loss the policy contains the following provisions:

"'Persons sustaining loss or damage by fire shall forthwith give notice of said loss, in writing, to the company, and, as soon thereafter as possible, render a particular account of such loss, signed and sworn to by them, stating whether any and what other insurance has been made on the same property; giving copies of the written portion of all policies thereon, also the actual cash value of the property and their interest therein; for what purpose and by whom the building insured, or containing the property insured, and the several parts thereof, were used at the time of the loss; when and how the fire originated; and shall also produce a certificate, under the hand and seal of a magistrate or notary public nearest to the place of the fire (not concerned in the loss as a creditor or otherwise, nor related to the assured), stating that he has examined the circumstances attending the loss, knows the character and circumstances of the assured, and verily believes that the assured has, without fraud, sustained loss on the property in-

sured, to the amount which such magistrate or notary public shall certify.

" ' The assured shall, if required, submit to an examination, or examinations, under oath, by any person appointed by the company, and subscribe to such examinations when reduced to writing, and shall also produce their books of accounts, bills, invoices or other vouchers, and exhibit the same for examination at the office of the company, and permit extracts and copies thereof to be made. The assured shall also produce certified copies of all bills and invoices the originals of which have been lost, and shall exhibit all that remains of the property which was covered by the policy, damaged or not damaged, for examination, to any person or persons named by the company; and, as a part of the preliminary proofs of the loss, the assured shall, if the claim shall be for a building destroyed by fire, if requested to do so, furnish the company with plans and specifications of the buildings destroyed and damaged, which shall be duly verified .by the oath of the assured.'

" In case of loss the company agree to pay ' sixty days after the proofs of the same, required by the company, shall have been made by the assured and received at the office in Chicago, and the loss shall have been ascertained and proved in accordance with the terms and provisions of this policy.'

" There is no claim that notice of the loss was not given as required by the policy, nor that the company demanded any plans or specifications of the building destroyed which were not furnished; but the answer denies that proofs of loss have been made or furnished by the plaintiff, or that any certificate of a magistrate or notary public has been furnished to the company, as required by the policy.

" The evidence shows that the fire occurred on the 29th of December, 1877, during the life of the policy, and that, on the 15th of January following, one Ostrander, the general state agent of the defendant.company, appeared in Oshkosh, and demanded of the plaintiff that he submit to an examination

under oath respecting his loss, as provided in the policy. The agent testified that he was sent there, or came there, for the purpose of inquiring into the circumstances attending the loss; that it had been intimated to the company that the loss was a fraud, and he came for the purpose of investigating the matter. The plaintiff submitted to an examination under oath. The examination was taken down in writing by a notary employed by the defendant, was signed by the plaintiff, and delivered to said agent Ostrander on the 16th of January, 1878. The examination was produced on the trial, and is a full and exhaustive examination as to all the circumstances attending the fire, and as to the value of the insured building. The plaintiff testified that he also furnished the agent with copies of the bills of materials which were put into the building, and that after the examination was concluded, and the bills furnished, he was not informed by said Ostrander, or any other person for the company, that any further or other proofs of loss were required to be produced by him."

The cause was submitted for the appellant on the brief of *Gabe Bouck.*

*Charles W. Felker,* for the respondent.

TAYLOR, J. As the only object of requiring proofs of loss by the assured is to give the company evidence showing that the loss was not fraudulent, and showing the extent of the loss, so that it may judge of the justice of the claim made by the assured under the policy, it would seem that the examination made in this case might well be deemed by the assured as a substitute for the formal proofs required by the terms of the policy. The examination covered the grounds required to be covered by the formal proofs, and, having been made under the searching and critical questioning of the defendant's agent, was necessarily more satisfactory than the formal proofs were likely to be. The provision of the policy which requires the assured to submit to this examination, even though formal

proofs have been made and delivered, clearly indicates that the company considers this examination under oath, to be made by one of its own agents, a more effective and certain way of getting at the real facts attending the loss, and the amount of the loss, than is afforded by the formal proofs. We are therefore inclined to hold that when the company demands that the assured shall submit to such examination before the formal proofs of loss have been made, and he submits and answers all questions propounded to him, he has the right to consider such examination a substitute for the formal proofs, and such formal proofs will be held waived, unless the company notifies the assured that it requires such formal proofs in addition to such examination.

The making of the formal proofs and the receipt of them by the company is not a waiver on its part of the right to have the examination, as it is clear from the terms of the policy that the examination is intended to enable the company to have other and additional proofs of the loss, if it desires them, before it shall be compelled to pay. The examination is to enable the company to obtain more full and complete proofs than the formal proofs afford; and when this kind of proof is demanded and received before the formal ones are made, the making of such formal ones would seem to be a work of supererogation, and in such case it is just to presume that the company waives the formal proofs. The certificate of the magistrate is a part of the formal proofs of loss. It is required as some evidence of the fairness of the loss, and as a slight protection against a fraudulent claim; and, as a part of such formal proofs, may be deemed waived by the examination unless the assured be notified that it is required notwithstanding such examination. That an examination of the kind made in this case is a waiver of the formal proofs, or that it is evidence tending to prove such waiver, is fully sustained by the authorities. *Priest v. Ins. Co.*, 3 Allen, 602; *Wyman v. Ins. Co.*, 1 Allen, 301, 304; *Security Ins. Co. v. Fay*, 22 Mich., 467.

Badger vs. The Phœnix Ins. Co. of Brooklyn.

In this last case the court held that a waiver of the formal proofs might be inferred from the fact that an examination had been made by an agent of the company, of a much less formal nature than the one made in this case. The court used this language in regard to the office which the proofs are intended to perform: "We think the formalities, being mostly matters of routine, beyond the ascertainment of the facts relating to the circumstances of the fire and the amount of the loss, might be waived, and that the case was fairly left to the jury on that point." This court has always held a liberal rule as to furnishing proofs of loss, and has repeatedly held that if imperfect proofs are furnished and retained, without notice from the company that they are defective, and that further proofs are required, it will be presumed the company have waived all defects in such proofs, and all necessity for further proofs. *Killips v. Ins. Co.*, 28 Wis., 472; *Warner v. Ins. Co.*, 14 Wis., 319; *O'Conner v. Ins. Co.*, 31 Wis., 160; *McBride v. Ins. Co.*, 30 Wis., 562–8; *Bammessel v. Ins. Co.*, 43 Wis., 463.

We think the evidence in this case was sufficient to have justified the jury in finding that the formal proofs of loss had been waived by the company, and that upon this question the case should have gone to the jury. But it is urged that if the learned circuit judge erred upon this point, still the nonsuit was right, for the reason that the action was prematurely commenced, under the provision of the policy that in case of loss the company promise to pay, "sixty days after proofs of loss shall have been made by the assured, and received at the office at Chicago, and the loss shall have been ascertained and proved in accordance with the terms and provisions of the policy." It is probable that under this provision, if formal proofs of loss had been made and sent to the office at Chicago, an action might properly be commenced after the expiration of sixty days from that date, although the company may have required the assured to submit to an examination at a later day, and

such examination had not been completed sixty days before the action was commenced; the meaning of the whole provision being that the company shall not be compelled to pay until sixty days after formal proofs are made and received, nor until such examinations as the company have the right to demand of the assured have been submitted to by him and have been completed.

It might not be inconsistent with this provision to hold that when the formal proofs are waived by the company by a resort to an examination of the assured under oath before any such formal proofs are made, the money becomes payable immediately when such examination is concluded and no other or further proof of loss is demanded by the company. It might be urged in favor of this construction, that, if it were not so held, the company might delay payment for an indefinite period, by first proceeding to make examinations under oath, and continuing such examinations for days or weeks, and then demanding the formal proofs and refusing payment until sixty days after their receipt. Without, however, resorting to this construction of the policy, we think the action was not prematurely commenced. Giving the company the benefit of the construction, that, when the company waives the formal proofs and resorts to a personal examination of the assured under oath as to the circumstances of the loss, it is entitled to sixty days after the examinations are closed before payment can be enforced, the action was not prematurely commenced. The proofs show that the examination was closed, signed by the assured, and delivered to the general agent of the company (and, as we must presume, at his request) on the 16th day of January, 1878, and the action was not commenced until the 18th of March following. The sixty days expired on the 17th of March. The proofs having been delivered to the general agent of the company at Oshkosh, it was a waiver of the right to have the assured deliver them at Chicago, and the sixty days commenced to run at the time of such delivery.

As is very forcibly urged by the learned counsel for the appellant: " There could be but one delivery. When the plaintiff delivered them to the agent of the company at Oshkosh, it was out of his power to make any other delivery. They had passed out of his possession, and were in the possession of the company." And the fact that the agent of the company never sent them to the office at Chicago, but immediately delivered them to its attorney at Oshkosh, and they were retained by such attorney until the trial, is the most satisfactory evidence of a waiver of the delivery at the office in Chicago. Had they been delivered at the Chicago office, it is to be presumed they would have been immediately sent to its attorney at Oshkosh, as it clearly appears the company desired them to be in the hands of its attorney at that place, and not in the office in Chicago. The delivery of the proofs to the agent of the company, at his request, in the city of Oshkosh, was a waiver of the right to have them delivered at the office in Chicago. It was for the convenience of the company that they were delivered and retained at Oshkosh, and it is quite apparent that the company was not in any way prejudiced because they were not received at the office in Chicago.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded for a new trial.