# Central City Insurance Co. *v.* Oates.

*Action on Policy of Insurance against Fire.*

1. *Stipulations in policy as to notice and proof of loss.*—In a policy of insurance against fire, stipulations requiring the assured "forthwith to give notice of said loss to the company," "as soon after as possible render a particular account of such loss," and "produce the certificate of the nearest disinterested magistrate" as to his examination into the circumstances of the loss, are conditions precedent to the liability of the insurance company, and satisfactory proof of compliance is an essen-

[Central City Insurance Co. v. Oates.]

tial pre-requisite to a right of recovery, unless such compliance has been waived.

2. *Same; time when notice and proof must be given or made.*—The word "forthwith," in such a stipulation, means without unnecessary delay, or with reasonable diligence under the circumstances of the particular case; being construed liberally in favor of the assured, and strictly against the insurer.

3. *Waiver of notice and proof of loss.*—Proof of loss, if furnished forthwith, or within a reasonable time, may also operate as notice; but notice can not supply the place of proof, nor dispense with the necessity of producing it; nor is the necessity for proof waived because the insurer, on receiving notice, does not demand proof, nor call the special attention of the assured to the necessity for it, doing nothing which can operate as an estoppel or waiver.

4. *Deposit of notice or proof in post-office.*—When the policy requires that the notice or proof of loss shall be given or made to the insurer in the city of his residence, or in which he has his principal place of business, the deposit thereof by the assured in the post-office of the place at which the loss occurred, addressed to the insurer at his proper residence, but never received by him, is not a compliance with the condition.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by W. J. Oates, against the appellant, a domestic corporation having its principal place of business in the city of Selma; and was founded on a policy of insurance on a stock of goods against loss or damage by fire, which the plaintiff had effected with the defendant, through Chandler Bros., defendant's agent in Montgomery. The policy was dated July 1st, 1885, was for the sum of $1,000, and for the term of one year. The stock of goods, with the building in which plaintiff carried on his mercantile business, was consumed by fire on the 1st March, 1886; and this action was commenced on the 16th November, 1886. By the terms of the policy, the loss was payable "sixty days after due notice and proofs of the same, made by the assured and received at the office of the said company in the city of Selma, in accordance with the terms of this policy, hereinafter mentioned;" and it contained the following (with other) stipulations: "In case of loss, . . the assured shall forthwith give notice of said loss to the company, in the city of Selma, and, as soon after as possible, render a particular account of such loss, signed and sworn to by them, stating whether any and what other insurance has been made of the same property, giving copies of the written portions of all policies thereon, the actual cash value of the property, their interest therein, and when and how the fire originated; and shall also produce a certificate under the hand and seal of a magistrate, notary public, or commissioner of deeds,

nearest to the place of the fire, . . stating that he has examined the circumstances attending the loss, knows the character and circumstances of the assured, and verily believes that the assured has, without fraud, sustained loss on the property insured to the amount certified."

The defendant pleaded the general issue, and a special plea, which, after setting out the stipulation above copied, averred that "plaintiff never did, before the commencement of this suit, render to this defendant an account of the loss mentioned in the complaint, signed and sworn to by said plaintiff; and did not, before the commencement of this suit, produce to this defendant a certificate of any magistrate, notary public, or commissioner of deeds, about or concerning the loss mentioned in the complaint." To this special plea the plaintiff replied, "that within one week after said loss occurred plaintiff employed one H. C. Bullock, an attorney, to draw up and make in proper form proofs of loss, as required by said policy; and that said attorney did, within ten days from the date of said loss, in the office of S. H. Beasley in the city of Montgomery, who was then and there an agent of defendant for the transaction of insurance business, write out, present and deliver to said agent, for transmission to defendant, plaintiff's claim under said policy, and demanded payment thereof, and said Beasley promised to send said letter to defendant; that afterwards, to-wit, within two weeks thereafter, plaintiff again went to said Beasley's office in Montgomery, he being still an agent of defendant for the transaction of insurance business, and demanded a settlement or payment of said claim, and was thereupon informed by said Beasley that the company's adjuster, who was expected to look into said loss, had started to go to plaintiff's place for the purpose of adjusting the loss, but had been taken sick at Montgomery, and compelled to return home; that within two weeks thereafter, said Beasley being still defendant's agent as aforesaid, plaintiff was notified by him that he, plaintiff, had better go to Selma, and see one Jones, the defendant's secretary, who would adjust the loss; that plaintiff, within thirty days after said loss, informed Chandler Bros., agents of defendant, through whom said policy was taken out, of plaintiff's said loss, and requested payment; that said Chandler Bros., within said thirty days, still being agents of defendant, wrote to plaintiff that the company had been notified of the loss, and that the company's adjuster would call on plaintiff to adjust the loss; that plaintiff visited

[Central City Insurance Co. v. Oates.]

Selma shortly after said last interview with Beasley, and within sixty days after said loss, and there saw E. H. Jones, defendant's secretary, and asked of him a settlement of plaintiff's said loss, and was informed by him that the loss had been placed in the hands of an adjuster, who had since died, and was at that time in the hands of one Abrams, then the defendant's adjuster. And plaintiff further saith, that at no one of his interviews, either with said Beasley, said Chandler Bros., or said Jones, was any objection made to the nature of the claim, or deficiency of any kind in the proof of loss. Wherefore plaintiff saith, that defendant has waived, and is now estopped to set up the matters stated in said plea," &c. A demurrer was interposed to this special replication, but was overruled by the court; and issue was then joined on it.

On the trial, as the bill of exceptions shows, it appeared that the plaintiff made application for a policy to Chandler Bros., who were insurance agents in Montgomery, and afterwards received the policy from them; but that they were not the agents of the defendant, and they procured the policy through S. H. Beasley, who was the defendant's agent, under an agreement (as customary) to divide the commissions. The plaintiff adduced evidence in support of his replication, showing that he had employed H. C. Bullock, an attorney at law, to make due presentation of his claim; and that Bullock wrote a letter in his name, addressed to the defendant at Selma, which was dated April 23, 1886, and contained the following expressions; "On the second day after the fire, I gave my policy to my attorney, and instructed him to see the agent at Montgomery, and to report my loss, and to get such information as might be necessary for me in presenting my claim for adjustment. He went immediately to the office at Montgomery, but found the agent absent, and left a note for him at his office, requesting such information to be communicated to me as might be required. My attorney's absence then for two weeks, at court in an adjoining county, together with the high waters, has prevented my again seeing him and the agent, in order to make known my losses, until this date. I trust it will be convenient for you at some early day to send your adjuster, and have my losses assessed." No reply to this letter was received by plaintiff, nor to any one of several other letters afterwards written to defendant, one in plaintiff's name, and

36

the others in the name of his attorney, threatening suit if the matter was not settled.

The plaintiff, testifying for himself, stated that his instructions to Bullock, when he employed him, were "to notify the company;" that while in Montgomery, "some fifteen or twenty days after the fire," he went with Bullock to the office of Chandler Bros., by whom they were referred to Beasley; that they then went together to the office of Beasley, "who said he ought to write to the company;" that he (plaintiff) "said he did not know how to write the letter, and Bullock thereupon wrote said letter for him," being the letter dated April 23d, above mentioned; and that Beasley read this letter before it was mailed, and suggested no changes in it. Plaintiff testified, also, that he afterwards "received a letter from Beasley, Chandler Bros., or the defendant, he could not say which, notifying him to meet an adjuster at Bozeman, but no one came;" that he afterwards went to Beasley's office, on receiving a message from him, and was advised by him to go to Selma; that he thereupon went to Selma, "and saw Mr. Jones, the secretary of the company, who said that the matter was in the hands of an adjuster, the one who first started up there having died; that Jones told him to write to Mr. Abrams, the adjuster who had charge of the claim; that nothing was said about proofs of loss; that he did not remember when this occurred; that he afterwards wrote to Mr. Abrams, but never received any reply from him or the company." Two letters written by plaintiff to Abrams were offered and read in evidence for plaintiff, dated respectively August 19th and August 25th.

Beasley testified, on behalf of the defendant, that when plaintiff called at his office in company with Bullock, "witness told him the company would want to know how and when the fire occurred, and all the particulars;" that when Bullock had written the letter, and witness had read it, "he explained to plaintiff what proof of loss was, and what was necessary, and told him, if he wished it, witness would give or get for him necessary instructions in making proofs, not then having any blank forms, as he did not keep them." As to the interview at the office of the defendant in Selma, Jones testified, on the part of the defendant, that it took place in August; that plaintiff "handed out his policy, and wanted to know what they would do about it; that he (witness) replied, that he was not familiar with the matter, and referred plaintiff to Mr. Abrams, the adjuster, whose duty it

was to go to the place of the fire, investigate, and submit his report to the company, and whose address he wrote and gave to plaintiff; that he then went to dinner, having first introduced plaintiff to Mr. F. L. Pettus, who was the company's general counsel, though he did not inform plaintiff of the fact, and asked Pettus to remain in the office until his return; that he found them conversing on his return, and heard Pettus ask plaintiff if he had made his proofs of loss, to which he replied that he had not; and that Pettus then told him the company always required proofs, and would not consider a claim until the proofs had been submitted." The testimony of Pettus, also a witness for the defendant, was to the same effect. The witness Jones further testified, on cross-examination, that he did not, at said interview with plaintiff, "tell him that it was necessary to make sworn proofs of loss, nor that it was necessary for him to furnish a certificate from the nearest justice of the peace, or other officer named in the policy;" and the court admitted this evidence, against the objection and exception of the defendant.

The plaintiff further testified, on re-examination in chief, "that between the 23d April and the 5th May, 1886, he had made an affidavit before W. J. Brassell, the justice of the peace living nearest to him, of the amount of his loss and the time of the fire, and stating therein the amount of his loss as between $1200 and $1500, but could not give any more particular account of the contents of said affidavit; and that he deposited this affidavit in the post-office at Bozeman, in an envelope addressed to the defendant at Selma." The witness Jones testified in reference to this, on the part of the defendant, "that he had charge of the defendant's office in Selma, and received all the proofs of loss sent to it—they all passed through his hands; that the defendant had never received any proofs of loss in this case, had never received the affidavit mentioned by plaintiff, nor any certificate of loss from any notary public, justice of the peace, or commissioner of deeds." Abrams, the adjuster, also a witness for the defendant, testified, "that he had never received any proofs of loss from the plaintiff, and had never written any letters to him;" but he further testified, on cross-examination, "that he never answered plaintiff's letters, as he waited for proofs; that he had discussed the matter of this loss with Jones, defendant's secretary, prior to August, 1886, and concluded to take no action until proofs of loss were furnished, and not to answer any letters unless they contained proof of loss."

On the evidence above stated, the court gave the following (with other) charges to the jury: (1.) "If the jury are reasonably satisfied from the evidence that the substance of the replication is reasonably established by the evidence, they will find for the plaintiff; and if it is not reasonably established, they will find for the defendant." (2.) "It was competent for the defendant to waive the said preliminary proof; and if, by acts and conduct of itself or its authorized agents, it led the plaintiff reasonably to believe that no other or further acts on his part were necessary towards furnishing such proof, then it would be a waiver of such requirement, and it is not necessary for plaintiff to have furnished other or further proof." (3.) "If the jury believe from the evidence that plaintiff, within sixty days after the loss, notified defendant of his loss, and also notified said Beasley, its agent (if they find he was such agent), and asked a settlement; and that in pursuance of an understanding between Jones and Abrams, defendant's managing secretary and adjuster (if they were such), no response was made to plaintiff's letters; and that neither defendant nor said Abrams ever pointed out or brought to plaintiff's attention any defect or objection to proof of loss; then, upon this state of facts, if the jury find them to exist, the defendant waived any right it otherwise might have had to object to the preliminary proof of loss as a defense to this suit." (4.) "If the jury believe from the evidence that the defendant, in its conduct towards plaintiff, was lacking in good faith and fair dealing, as to the nature of defendant's objections to plaintiff's claim, and that such conduct reasonably led the plaintiff to believe that proof of loss had been waived; then the defendant can not take advantage of results produced by its own conduct, nor claim advantage from the failure to make proof of loss as required by the policy."

The defendant excepted to each of these charges as given, and also to the refusal of the following (with other) charges, which were asked in writing: (1.) "The proofs of loss are distinct from, and supplementary to the notice, so that notice is not proof, though proof may be notice; and the silence of the defendant, after receiving notice, would not, of itself, be evidence of a waiver of the proofs of loss." (2.) "Though the defendant employed an adjuster to examine into the loss, and plaintiff wrote to him two or more times, asking him to come and examine and adjust the loss, and the adjuster did not answer any of said letters, and did not

go and examine and adjust the loss, but remained silent; yet this would not be a waiver of the giving of a particular account of the loss, signed and sworn to by the plaintiff, and the production of the certificate of a notary, magistrate, or commissioner of deeds, as required by the terms and conditions of the policy." (3.) "Although the jury may believe from the evidence that the plaintiff gave notice to the defendant by the letter of April 23, 1886, and the defendant and its officers remained silent after receiving it; yet this silence, alone, would not constitute a waiver of the condition of the policy requiring sworn proof of loss." (4.) "Preliminary proofs of the particulars of loss are conditions precedent to the right of the assured to recover; and they must be delivered within the time specified by the policy, or, if no time is specified, within a reasonable time under all the circumstances." (5.) "If plaintiff employed a lawyer to collect the loss under the policy, or to assist him in collecting it, the law imposed no duty on the defendant to inform plaintiff as to what was necessary to be done by him, or to assist him in the collection of the loss; and the defendant's silence could not be regarded by them as a waiver of proofs of loss, or of the certificate required by the policy." (6.) "If the jury believe all the evidence, they must find for the defendant."

The rulings of the court on the pleadings and evidence, the charges given, and the refusal of the several charges asked, are now assigned as error.

Tompkins, London & Troy, and Pettus & Pettus, for appellant.—In the event of a loss, the policy required (1) notice thereof, (2) proofs of the particulars of the loss, and (3) the certificate of the nearest magistrate, or other designated officer; and these were conditions precedent to the right of recovery. The notice was required to be given "forthwith," and the proofs and certificate furnished "as soon after as possible." As matter of fact, the notice was given on the 23d April, nearly two months after the fire, and the proofs and certificate were never furnished. If the notice was sufficient, which is not admitted, or if objections to its sufficiency were waived; still there can be no presumption of waiver as to the proofs and the certificate. Proof may amount to notice, but notice is not proof. There can be no waiver unless knowledge is shown, nor can a waiver be implied from mere silence.—May on Insurance, sec. 460;

·[Central City Insurance Co. v. Oates.]

Wood on Insurance, sec. 428; *O'Reilly v. Insurance Co.*, 60 N. Y. 169; 7 Wall. 386; *Felrath v. Insurance Co.*, 77 Ala. 194; *Insurance Co. v. Lawrence*, 2 Peters, 25; *Titus v. Glenn Falls Ins. Co.*, 81 Ala. 419; *Gilbert v. N. A. Ins. Co.*, 23 Wend. 43; *Bennecke v. Insurance Co.*, 105 U. S. 355; *Queen Insurance Co. v. Young*, at present term; 38 Penn. St. 13; 6 Phila. Penn. 252; 4 Ill. App. 145; 43 N. H. 621; 12 Iowa, 126.

JONES & FALKNER, *contra.*—The defendant in this case was not merely silent, but did affirmative acts which, if not intended and designed to mislead plaintiff, certainly had that effect; and its whole studied course of conduct through the transaction was a waiver, ·in law, of formal proofs of loss. It may not have been defendant's duty to speak at all—it might have maintained an unbroken silence.　But, when its officers and agents did speak, the law, as well as common fairness, demanded that nothing should be said or done which would tend to deceive or mislead the plaintiff, or prejudice his rights in the assertion of his claim, if he acted on what was said or done.　Plaintiff went to defendant's agent, through whom his policy was procured; and was told by the agent, "that he had no blank forms of proof of loss, and did not keep them, but that he could get proper forms on application to the company."　The letter to the company was written in said agent's office, and was read by him, without any suggestion of a defect.　Plaintiff's letter asked an adjuster to look into his loss, and Beasley afterwards told him to meet an adjuster, at a time and place appointed, but none came, nor was any reply made to plaintiff's letter. After waiting a reasonable time, plaintiff went, at the suggestion of Beasley, to the home office in Selma, and had an interview with defendant's secretary, or principal business manager, who, in reply to the question "what they were going to do about it," said that he was not familiar with the matter, and referred plaintiff to Abrams, the adjuster, at Greenville; and yet, before that time, as they both testify, "they had discussed the matter of this loss, and concluded to take no action until proofs of loss were furnished, and not to answer any letters."　The defendant's conduct goes beyond mere silence, and amounts to a waiver in law.　Good faith, fair dealing, and the law, alike demanded that defendant, speaking or acting at all, should specify its objections. See *Firemen's Ins. Co. v. Crandall*, 33 Ala. 9; *Felrath v.*

.[Central City Insurance Co. v. Oates ]

*Ins. Co.*, 77 Ala. 194; *P. & A. Ins. Co. v. Young*, 58 Ala. 476; *Home Ins. Co. v. Adler*, 71 Ala. 576; *Ala. Gold Life Ins. Co. v. Thomas*, 74 Ala. 578; *Com. F. Ins. Co. v. Allen*, 80 Ala. 571.

SOMERVILLE, J.—The policy of insurance sued on, among other conditions, requires three important steps to be taken by the assured, in the event of a loss by fire: (1) he must "*forthwith give notice* of said loss to the company *in the city of Selma;*" (2) "as soon after as possible, [he must] *render a particular account of such loss*, signed and sworn to by him," the assured, stating the origin of the fire, what other insurance he has, if any, his interest in the property, its value, and by whom and for what purpose it was occupied; (3) he must produce the *certificate of* the nearest disinterested *magistrate*, that such officer has examined the circumstances of the loss, and believes that it originated without fraud, and amounted to a specified sum. These three requirements, omitting for the present all mention of others —viz., (1) *notice* of loss; (2) sworn *proof* of loss; (3) *certificate* of loss by a magistrate—have uniformly been held by the courts to be conditions precedent in policies of insurance like the present one, and satisfactory evidence of compliance with them, in proper time, has been held to be an essential pre-requisite to the right of recovery by the assured, unless such compliance is waived by the insurer.—*Wellcome v. People's Eq. Mut. Fire Ins. Co.*, 2 Gray (Mass.), 480; May on Insurance, sec. 460, 466; *Fire Ins. Co. v. Felrath*, 77 Ala. 194.

"Forthwith," in all such policies, means without unnecessary delay, or with reasonable diligence under the circumstances of the particular case.—*St. Louis Ins. Co. v. Kyle*, 11 Mo. 278; s. c., 49 Amer. Dec. 74. It has been held in one case, that delay of eleven days, and in another of eighteen days, in giving notice of loss, is not a compliance with such a requirement, in the absence of excusatory facts explaining the delay.—*Trask v. State Fire & Marine Ins. Co.*, 29 Penn. St. 198; s. c., 72 Amer. Dec. 622; *Edwards v. Lycoming Ins. Co.*, 75 Penn. St. 380. Where the fire occurred on the 15th, and the plaintiffs, hearing of it on the 18th, gave notice by mail on the 23d, this was held to be a sufficient compliance with a condition requiring notice to be given "forthwith."—*N. Y. Cent. Ins. Co. v. National Ins. Co.*, 20 Barb. 468. And notice given on the morning after

the fire was held sufficient, in *Hovey v. Amer. Mut. Ins. Co.*, 2 Duer, 554. The settled rule in all cases, however, is to construe such requirements liberally in favor of the assured, and strictly against the insurer.—*Piedmont & A. Ins. Co. v. Young*, 58 Ala. 476; *Ala. Gold Life Ins. Co. v. Johnston*, 80 Ala. 467; s. c., 60 Amer. Rep. 112.

It has been held, by this and other courts, that where preliminary *proofs of loss* are presented to the insurer in due time, and they are defective in any particular, these *defects* may be waived in either of two modes: (1) by a failure of the insurer to object to them on any ground, within a reasonable time after receipt—in other words, by undue length of silence after presentation; or (2) by putting their refusal to pay on any other specified ground than such defect of proof. The reason is, that fair dealing entitles the assured to be apprised of such defect, so that he may have an opportunity to remedy it before it is too late.—*Fire Ins. Co. v. Felrath*, 77 Ala. 194; *Firemen's Ins. Co. v. Crandall.* 33 Ala. 9; *Ins. Co. v. McDowell*, 50 Ill. 120; s. c., 99 Amer. Dec. 497; *St. Louis Ins. Co. v. Kyle*, 49 Amer. Dec. 74, *supra*; *Com. Ins. Co. v. Allen*, 80 Ala. 571.

So, there are cases decided by this and other courts, which hold, and properly so we think, that an entire failure to make any formal proof of loss may sometimes be excused, on the principle of waiver, or estoppel *en pais*. In *Martin v. Fishing Ins. Co.*, 20 Pick. 389; s. c., 32 Amer. Dec. 220, no evidence was offered of any preliminary proofs before bringing the action, but only of an abandonment not accepted, and a demand of payment of the loss. The insurer refused to pay the loss, solely on account of the unseaworthiness of the vessel, and in all their communications with the plaintiff made no objection to the want of proof. The court held, that the refusal to pay on the ground specified was a fact from which the jury were authorized to infer a waiver of the proof of loss. On like principle, a waiver of preliminary proofs has been inferred from a distinct refusal of the company to pay, because the assured had taken other insurance without notice, and "had in other ways acted unfairly." *Charleston Ins. Co. v. Neve*, 2 McMull. (S. C.) 237. And again on the ground, that no valid contract of insurance had ever been entered into, because incomplete at the time of the loss, no objection being made to the want of such proofs. *Tayloe v. Merchants' Ins. Co.*, 9 How. (U. S.) 390; *Home Ins. Co. v. Adler*, 71 Ala. 518. So, where the insurance

company subjected the assured to a personal examination under oath, which statement he subscribed, as required by the terms of the policy, and no demand was made for formal proofs, it was held that, upon this state of facts, the jury were authorized to find a waiver of such proofs.—*Badger v. Phœnix Ins. Co.*, 49 Wis. 400. The payment by the insurer of a part of the sum agreed to be paid by the policy in case of loss, has also been held a waiver of the usual preliminary proofs.—*Westlake v. St. Lawrence Ins. Co.*, 14 Barb. (N. Y.) 206. So, the offer to pay a specified sum, accompanied by a denial of liability for some of the articles as not covered by the policy, without demand of such proofs.—*Commercial Fire Ins. Co. v. Allen*, 80 Ala. 571.

We can find no case, however, where the mere silence of the insurer has been construed as a waiver of the presentation of preliminary proofs by the insured, where no such proofs, defective or otherwise, have been presented. The policy itself is the most solemn notification possible of the imperative pre-requisite of furnishing such proofs. It is there stipulated, that they must be furnished as soon as possible after the fire, and this stipulation is a standing notice of the requirement. It stands to reason, that this notice need not be reiterated by the insurer, nor any special attention of the assured called to it, unless the particular circumstances of the case render it necessary to fair and honest dealing between the parties. And the authorities accordingly hold, that the mere silence of the underwriter, or insurer, or his failure to specify the non-production of such preliminary proofs, as an objection to the payment of the loss, is not sufficient evidence to justify a jury in inferring a waiver of the production.—*Columbian Ins. Co. v. Lawrence*, 2 Pet. (U. S.) 25; *O'Reilly v. Guardian Ins. Co.*, 60 N. Y. 169; *Keenan v. Mo. State Mut. Ins. Co.*, 12 Iowa, 126. A like principle was applied in *St. Louis Ins. Co. v. Kyle*, 11 Mo. 278; s. c., 49 Amer. Dec. 74, where there was a failure on the part of the insurer to object to a notice of loss when it was received too late. It was suggested by the court, that it was not the duty of the company to make any formal objection to the want of notice, and whether they were silent, or made objections on this ground, could not alter the rights of the parties. "Such a doctrine would be in fact," it was said, "implying a *new contract* between the parties, from the mere inaction or silence of one party." See, also, *Patrick v. Farmers' Ins. Co.*, 43 N. H. 621; s. c., 80 Amer. Dec. 197.

As we have said, the contract exacts (1) a notice of loss forthwith, and (2) proofs of loss as soon thereafter as possible. It is manifest that mere *notice* of loss is not *proof* of such loss, and can not ordinarily subserve such purpose; although proof of loss, if made "forthwith," may answer not only as proof, but as notice.—Wood on Ins., § 428; May on Ins., § 460. It has been accordingly held, in recognition of this distinction, that there might be a waiver of the notice of loss, without a waiver of the proof of loss required to be furnished.—*Desilver v. State Mut. Ins. Co.*, 38 Penn. St. 130.

In this case, there was notice of loss, but the company received no preliminary proofs. The policy required that such proofs should be rendered to the company, meaning from the context, in the city of Selma, where the notice also was required to be given. The deposit in the post-office of a written statement of loss, made out and sworn to, and addressed to the company at Selma, but never received by them, was not a delivery of such proof to them, and could not operate to fulfill the requirement of the contract that such proofs of loss should be rendered to the company at Selma.—*Hodgkins v. Montgomery Co. Ins. Co.*, 54 Barb. (N. Y.) 213.

Waiver is necessarily a matter of mutual intention between the contracting parties, in the nature of a new contract between them. In the absence of evidence that the company had ever received any proofs of loss, or knew their contents and defects, if any, it can not be contended that such defects were waived. There can be no waiver of anything, as to the existence of which one is totally ignorant.—*Bennecke v. Ins. Co.*, 105 U. S. 355.

In *Dawes v. North River Ins. Co.*, 7 Cow. 462, it was held that the president of an insurance company, as such, possessed no power to waive full preliminary proofs. In *Queen Ins. Co. v. Young, ante*, p. 424; s. c., 5 So. Rep. 115, it was decided, that a local soliciting agent has no authority, after loss, to waive the breach of any condition in a fire-insurance policy. And *Patrick v. Farmers' Ins. Co.*, 43 N. H. 641; s. c., 80 Amer. Dec. 197, is authority for the proposition, that a condition in a policy of insurance requiring notice of loss to be given within thirty days is not waived by a vote of the directors of the company to indefinitely postpone the consideration of the loss, which was tantamount to a refusal to pay anything on account of it, the notice not having been given in due time.

The jury were probably justified in coming to the conclusion, that the *notice* of loss, under all the circumstances of the case, was given in a reasonable time, and in proper mode. But there were no *proofs of loss* furnished, and no conduct on the company's part from which the jury were authorized to infer a waiver of such proof.

Under a proper application of the foregoing principles, it is our opinion, that the defendant's demurrer to the plaintiff's replication should have been sustained; and that the defendant was entitled to have the general affirmative charge given as requested.

Reversed and remanded.