BAMMESSEL vs. THE BREWERS' FIRE INSURANCE COMPANY OF AMERICA. | 43 463 |
| 74 72 |

INSURANCE AGAINST FIRE. *(1) Waiver of proofs of loss. (2) Effect of ch. 347 of 1874.*

REVERSAL OF JUDGMENT. *(3) Appellant must show error injurious to him.*

1. An agreement by the insurer with the assured, after a loss, to submit the amount thereof to arbitration, is a *waiver* of the objection that "proofs of loss" were not furnished as required by the policy.

2. In an action on a fire insurance policy, where the amount of the loss was determined by ch. 347 of 1874 to be the amount of insurance written in the policy, the insurer cannot defend on the ground that, by the terms of the policy, "all fraud or attempt at fraud by false swearing or otherwise" on the part of the assured, was to cause a forfeiture, and that the assured, upon his examination under oath before a notary as to the amount of the loss, grossly and falsely exaggerated the value of the property for the purpose of defrauding the insurer.

2. A party cannot complain of a judgment against him because the damages awarded are *less* than the opposite party was entitled by law to recover.

APPEAL from the Circuit Court for *Winnebago* County.

Action upon a fire insurance policy, issued May 26, 1874, upon plaintiff's dwelling house in the city of Oshkosh, insuring it to the amount of $700. The building was totally destroyed by fire. The complaint alleges that it was worth, at the time of such destruction, at least $700; that plaintiff duly performed all the conditions of the contract on his part; that he gave defendant due notice, and furnished it with proofs of the loss; that afterwards the question of damage was submitted by the parties to three arbitrators; that two of these rendered an award determining such damage at $496; that defendant denies all liability to the plaintiff on said policy, and has not paid any part of said damage; and that plaintiff is still the owner and holder of said claim. Judgment is therefore demanded for $700, with interest, etc.

The answer sets up the following provisions of the policy: that the amount of loss or damage, if any, was to be estimated "according to the actual cash value of the property at the time of the loss;" that persons sustaining loss or damage by fire should forthwith give written notice of said loss to the company, and as soon after as possible render a particular account thereof, signed and sworn to by them, stating (among other things) the actual cash value of the property and their interest therein; that the assured should, if required, "submit to an examination or examinations under oath, by a person appointed by the company, and subscribe thereto, when reduced to writing;" that "all fraud or attempt at fraud, by false swearing or otherwise," should cause a forfeiture of all claim under the policy; and that, in case differences should arise touching any loss or damage, after proof thereof had been received in due form, the matter should, at the written request of either party, be submitted to impartial arbitrators, whose award in writing should be binding on the parties as to the amount of such loss or damage, but not as to the liability of the company on the policy. The answer then alleges

that, after the loss, plaintiff made and delivered to the defendant a false and fraudulent account of the alleged loss and damage, duly subscribed and sworn to by him, as the particular account of loss required by the policy, in which he falsely and fraudulently stated that the actual cash value of the property, immediately before the fire, was $1,000, and that by reason of such fire he had suffered damage to that amount, with intent to induce defendant to pay the full amount of $700 insured upon the property; that afterwards, while the loss was yet unadjusted, plaintiff submitted to an examination under oath, at the request of defendant's adjuster, and subscribed and swore to such examination when reduced to writing, wherein he grossly and falsely exaggerated the size, cost, condition, age and value of the insured property, for the purpose of defrauding the defendant.    The answer therefore insists that the claim under the policy has been forfeited.

On the trial, defendant put in evidence the policy, the agreement to submit to arbitration, dated October 28, 1875, and the oath and award of the arbitrators, both dated November 6, 1875.    It also offered in evidence the proofs of loss furnished by the plaintiff, taken July 31, 1875, and his examination under oath, reduced to writing and signed by him, as alleged in the answer (the same being dated November 6, 1875), and also oral evidence of the value of the property at the time of the fire; but the offers were rejected.    By direction of the court, the jury found for the plaintiff in the sum of $496, with interest; and from a judgment on the verdict, defendant appealed.

*F. W. Cotzhausen*, for the appellant, contended that the company was not estopped, by submitting the amount of the loss to arbitration, from setting up the forfeiture occasioned by plaintiff's attempted fraud, because such attempted fraud was not known to defendant until after the submission; and that the court therefore erred in rejecting evidence of the fraud.

The cause was submitted for the respondent on briefs of *Gabe Bouck*. He contended that, as the submission to arbitration was made six months after the loss, and three months after proofs of loss had been furnished, and as the only ground for defendant's refusal to pay plaintiff's demand at that time was, that the property was not worth the amount at which it was valued, if plaintiff had been guilty of such falsity in his proofs as to vitiate the policy, defendant then had knowledge of the fact, or was guilty of negligence in remaining ignorant of it, and could not subject the assured to the expense of an arbitration, without waiving the alleged forfeiture (*Webster v. Ins. Co.*, 36 Wis., 67; *N. W. Mut. Life Ins. Co. v. Ins. Co.*, 40 id., 446); that the examination under oath to which the assured is bound to submit, is a part of the preliminary proofs (*Ins. Co. v. Weides*, 14 Wall., 375), and must be had before the matter is submitted to arbitration; and that no false swearing or other fraud after the submission could vitiate the policy. *Ins. Co. v. Weides, supra.*

COLE, J. The policy in this case was issued in May, 1874, after chapter 347, Laws of 1874, took effect. In *Reilly et al. v. Franklin Ins. Co.* [*ante*, p. 449], a construction was placed upon that statute. It was held that it made the amount of insurance written in the policy conclusive of the value of the property at the time of loss, and fixed that amount as the measure of damages. That decision really disposes of every material question in this case. The amount recovered here was less than the sum written in the policy, but that affords no ground for complaint on the part of the defendant. The case of *F. & D. Ins. Co. v. Curry*, decided by the court of appeals of Kentucky (10 Ch. L. N., p. 43), is referred to and commented on in the Reilly case. We felt constrained to dissent from the reasoning of the Kentucky case, because it seemed to defeat the very policy of the statute; and approved of the decision of the U. S. circuit court in *White v. Conn. Mut.*

*Life Ins. Co.*, as laying down the better rule. (See Central Law Journal, Dec. 7, 1877.) It is unnecessary to repeat here what is said in the Reilly case.

It is said that the court below erred in rejecting proofs of loss. But it appears that the parties submitted to arbitrate as to the amount of loss, which we think was a waiver of all proof. Another objection is, that the court erred in rejecting the examination of the plaintiff, and the other evidence offered as to value of the property destroyed. But, as already remarked, the law of 1874 fixed the amount of loss, and left nothing open to inquiry on that question.

*By the Court.*—The judgment of the circuit court is affirmed.