Williams, J.
The plaintiff in error contends for the reversal of the judgments below, on the grounds; (1). That, as the pleadings admit no award was made by arbitrators fixing the amount of the loss, as provided by the policy, the plaintiff could not maintain the action; (2). That the false statement of the plaintiff, in the application for the insurance, that the building was occupied as a dwelling and store-room, when in fact it was unoccupied, vitiated the policy; and (3). That the plaintiff, in the application, falsely represented and warranted the property to be of a value grossly in excess of its actual value, which avoided the policy, and if not, by its terms, the plaintiff could recover no more than the actual value of *413 the property at the time of the loss. The questions raised are so intimately connected, they may be considered and disposed of together.
The policy expressly provides, that the amount of the loss, or damage, is to be estimated according to the actual cash value of the property at the time of the fire, and that no suit shall be commenced therefor until after an award of arbitrators chosen for that purpose, shall have been obtained, fixing the amount; and, that the policy shall be void if the property should be or become vacant.
It is not doubted, that when not controlled by statutory regulation, the conditions contained in a policy of insurance are as obligatory upon the assured as any other part of the contract; and it has been held, that when the policy provides, that it is issued upon the condition that if the statements made in the application are false, it shall be void, statements therein contained known to be untrue, will avoid the policy, whether material to the risk or not. Jeffries v. Life Ins. Co., 22 Wall. 47. It therefore becomes necessary, in the decision of this case, to determine the effect of the legislation of this state on the policy in question.
The conditions contained in policies of insurance, both life and fire, and the exceptions to the risk, and the contingencies ' upon which the company should be relieved from liability, became so numerous and complicated, usually printed in small type on the back of the policy, in terms which persons unlearned in the law or business of insurance would not readily understand, that it became a matter of no little difficulty for the assured to tell whether the policy afforded him any indemnity or not; and when the event insured against happened, the uncertainty of his claim against the company, constrained him to abandon, compromise, or litigate it. The legislatures of several of the states, enacted statutes designed to give greater certainty to the contract of insurance, and protect the assured against unreasonable forfeitures and defenses; which statutes, it is generally held, apply to and control all policies issued subsequent to their enactment. Of this character is the act of the legislature *414 of this state, passed March 5, 1879, entitled “an act to regulate contracts of insurance of buildings and structures.” This act with some unimportant verbal changes, was carried into the revision of 1880, and is now sections 8643 and 3644 of the Revised Statutes, which read as follows:
See. 3643. “ Any person, company, or association, hereafter insuring any building or structure against loss or damage by fire or lightning, by a renewal of a policy heretofore issued, or otherwise, shall cause such building or structure to be examined by an agent of the insurer, and a full description thereof to be made, and the insurable value thereof to be fixed by such agent; in the absence of any change increasing the risk without the consent of the insurers, and also of intentional fraud on the part of the insured, in case of total loss, the whole amount mentioned in the policy or renewal upon which the insurers receive a premium shall be paid, and in case of a partial loss the full amount of the partial loss shall be paid; and in case there are two or more policies upon the property, each policy shall contribute to the payment of the whole or the partial loss in proportion to the amount of insurance mentioned in each policy; but in no case shall the insurer be required to pay more than the amount mentioned in its policy.” Sec. 3644. “A person who solicits insurance and procures the application therefor, shall be held to be the agent of the party hereafter issuing a policy upon such application or a renewal thereof, anything in the application or policy to the contrary notwithstanding.”
The contract of insurance is evidenced by the policy, and like all other contracts is governed by the laws in force when made. The policy in suit having been delivered in this state, to a citizen thereof, insuring real property there situate, is an Ohio contract, and the foregoing sections of the statute being in force when it was issued, they entered into, and became part of the contract of insurance, fixing the measure of the obligation created by it, and controlling its construction and operation. The purpose and scope of the statute are not doubtful. It was designed, as its title declares, “ to regulate *415 contracts of insurance of buildings and structures.” Its terms are plain and unambiguous, and the evil’it was intended to remedy is apparent. It makes the person soliciting the insurance, the agent of the company issuing the policy, and puts it out of the power of the company to change that relation or avoid the consequences growing out of it, by stipulating in the policy, as was sometimes done, that he shall be considered the agent of the assured. The duty is expressly enjoined upon the company taking the risk, to cause the building to be examined by its agent, and full description thereof to be made by him, and the insurable value of the building to be fixed by such agent. The performance of this duty will enable the company to ascertain for itself, the condition of the building, the nature of the risk, and determine the amount for which it is willing to write the policy. The responsibility is thus cast upon the insurance company, of determining by such examination, whether it will insure the building, and if so, for what sum; and when it so chooses to take the risk, issue its policy, and receive premiums upon it, there is no reason why it should not be bound by its own examination, and valuation. Hence the statute, we think, very wisely provides, that “in the abscence of any change increasing the risk without the consent of the insurer, and of intentional fraud oil the part of the insured,” the company shall be liable; if the loss be total, then for the whole amount named in the policy; if partial only, then for the full amount of the partial loss; and in case there is more than one policy upon the property, each shall contribute to the payment of the whole or partial loss in proportion to the amount of insurance mentioned in each policy.
If, after the policy is issued, there be any change in the condition or surroundings of the property which increases the risk without the consent of the insurer, or if there be intentional fraud on the part of'the insured, these are regarded by the statute as matters of substance, and may defeat a recovery on the policy; but where there has been no intentional fraud on the part of the insured, a condition or *416 situation of the property at the time of the insurance, which the examination, that the agent is required by the statute to make, should have reasonably discovered, cannot, we think, be made available for that purpose; nor can the insurer, in case the property is entirely destroyed, be allowed to show that the value of the property is less than the amount mentioned in the policy.
It is contended by counsel for the plaintiff in error, that the statute does not apply to this policy, because: 1. The policy contains an agreement essentially different from the terms of the statute, which, it is claimed, it was competent for the parties to’ make, and by which they are mutually bound; and 2. No examination of the property was made by the agent of the company. And they further contend, that if the statute governs the policy, the statements in the application, of the value, and condition of the property, constituted an intentional fraud.
The statute rests upon considerations of public policy; one of its purposes being, to exact of insurance companies doing business in this state, reasonable diligence and care to avoid improper risks, and over-insurance, by requiring their agents to make personal examination of the property, and fix its insurable value, before writing the insurance. Well regulated companies, after such examination, would not take ' the risk if not a proper one, nor write a policy for an amount greater than the actual value of the property. The more effectually to accomplish this purpose, the statute has provided, that the company shall be liable on its policy, unless a change subsequently occurs increasing the risk, without its consent, or the assured has been guilty of intentional fraud; and, that in case of total loss, the company shall abide by the valuation it has placed upon the property. Under the rule of liability thus established by the statute, responsible companies are less likely to take risks recklessly, or for a sum greater than the value of the property; and persons whose buildings are insured, receive protection against the injustice resulting from merely technical defenses, founded upon the many conditions inserted in the policy, formerly resorted *417 to. The statute cannot, we think, be treated as conferring upon the assured a mere personal privilege which may be waived or qualified by agreement. It has a broader scope. It moulds the obligation of the contract into conformity with its provisions, and establishes the rule and measure of the insurer’s liability. Terms and conditions embraced in the policy inconsistent with the provisions of the statute, are subordinate to it, and must give way. Of this character are the stipulations that the loss or damage shall be estimated according to the true value of the property at the time of the fire, and that no suit shall be maintained until the amount shall be fixed by an award. These being in conflict with the statute, and therefore inoperative, the averments of the answer with respect to them were ineffectual as a defense, and evidence in support of them, was inadmissible. And the statements in the application, of the value of the property, and its condition, in regard to which the company should have been informed by the examination the statute required it to make, were immaterial, upon which the insurer had no right to rely, and could not be fraudulent.
Nor do we think the operation of the statute can be defeated, by the neglect of the agent to make the examination, or fix the insurable value of the property, as it requires. The duty of the company is to obey the law, and its disregard of that duty can give it no greater rights than the observance of it would. It is obvious, that if insurance companies were exempted from the operation of the statute by the omission of their agents to comply with its provisions, the statute would be practically annulled and its object defeated.
Authorities are not wanting, in which statutes of a similar nature have been given construction, which sustain, in principle, the views here expressed. A statute of Missouri enacted that “no misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due; and whether it so contributed in any case sjiall be a *418 question for the jury.” In answer to a suit upon a policy issued by a foreign company to a citizen of that state, after the statute went into effect, it was alleged that the policy contained a provision that the answers of the assured to the questions contained in the application, should constitute warranties and that if the policy should be obtained through fraud, misrepresentation or concealment, it should be absolutely void. It was further alleged that the answers in several particulars were false, but not that the matters in regard to which they were false contributed to the death of the assured. The plaintiff demurred, and the demurrer was sustained; the court holding that the statute applied to all policies delivered in that state after it went into effect, and, where the provisions of the policy conflict with the act, the latter controlled. In the opinion of the court, after referring to the case of Jeffries v. Life Ins. Co., supra, and other cases, in which it was held that where a policy contained the provision that if the statements in the application were not true, the policy should be void, the false statement of a fact avoided the policy, although it was not material to the risk, it was said by Dillon, C. J., “ the legislature of Missouri conceived, and we think wisely, that the promises held forth to the assured in the policies in general use were but too often a delusion and a snare, and as the courts were powerless to correct the evil, it ought to be corrected by statute.” The learned judge further says: “We are of' opinion that policies issued and delivered in Missouri after the act took effect fall within its protective operation ; and as to such policies, the act is to be treated as if incorporated therein. The general rule is that laws in existence are necessarily referred to in all contracts made under such laws, and that no contract can change the law.” White v. Conn. Mut. Life Ins. Co., 4 Dillon Circuit Court Rep. 177.
Wall v. Equitable Life Assurance Society, 32 Federal Reporter 273, involved the construction of a Missouri statute which provides, that no policy on life hereafter issued by a company authorized to do business in this state, shall, after payment of two full annual premiums be forfeited or become void by reason of non-payment of premiums; and also *419 provides for temporary insurance, and that upon the death, of the insured during the term of temporary insurance, and where no condition of the policy is violated except nonpayment of premiums, the company shall be liable for the full amount insured, as if there had been no default in payment. It was there held, that a provision in a policy, which required the payment of three full annual premiums before the insured was entitled to temporary insurance, was void. The opinion of the court is by Beewee, J., in the course of which, he says, it is insisted by the defendant that the statute “ merely gives a right or privilege to the insured which, like any other personal right or privilege, he may for sufficient consideration waive, and that such a waiver, not being forbidden by the statute, is not contrary to public policy in any such sense as that the courts should refuse to enforce it.” But the learned .judge in answer to the claim of the defense said: “ It is notorious that many insurance companies were rigorous in insisting upon forfeitures, sometimes under very inequitable circumstances, and there was no little public clamor by reason thereof. Such clamor prompted many legislatures to interfere, and to seek by legislation to protect what they supposed the rights of the insured. Such seems to have been the thought of the Missouri legislature, and it evidently intended by its legislation to provide a fixed and absolute rule applicable to all cases, — absolute and universal, because if it applied only in cases in which the policies were silent, or if it could be waived or changed, a child can see that it would protect only so far as the insurance companies were willing.”
Chamberlain v. N. H. Fire Ins. Co., 55 N. H. 249, was a case where the plaintiff, a mortgagee, insured the buildings on the mortgaged premises, against loss by fire, in the defendant company. The policy provided that in case of loss, the insurance should be paid to the mortgagee, to the amount of the mortgage, and contained a condition that the policy should be void if the premises should become vacant without immediate notice to the company, and its consent endorsed thereon. The mortgagor afterward removed from the premises, and they remained vacant for several months, when they were *420 destroyed by fire. A statute of New Hampshire then in force provided that “ no policy should be avoided by reason of any mistake or misrepresentation, unless it appears to have been intentionally and fraudulently made; but the party insuring, in any action brought against them on such policy, may show the facts, and the jury shall reduce the amount for which such party would otherwise be liable as much in proportion as the premium ought to have been increased if no mistake or misrepresentation had occurred.” In commenting upon this statute, Foster, C. J., in the opinion of the court says : “ The policy and purpose of the law were, to promote honest and open fair dealing, to do equal justice, to protect the confidence reposed by the insured in those with whom he may contract, and (especially disclaiming any reference to this defendant company), to spring the traps ‘concealed in the mass of rubbish,’ before the unwary traveler shall have put his foot in them; to prevent and prohibit, in short, the farce and fraud by which it has too often been found that the party apparently insured by the stipulations written upon one side of a piece of paper, was uninsured, by the conditions involved in the ‘insurance typography ’ indorsed upon the other side of the same piece of paper.” And again he says, “ the legislature of 1855 enacted the substance of the law which is now expressed in sec. 2, ch. 157, Gen. Stats., and every subsequent contract of insurance made in this state has been made in view of and in subordination to this law, which has thus been practically incorporated into the contract.”
A statute of Wisconsin provided, that where real property in that state, insured against loss by fire, should be destroyed by fire without criminal fault of the assured, the amount of insurance written in the policy should “ be taken and deemed to be the true value of the property at the time of such loss, and the amount of the loss sustained.” This statute was construed in the case of Reilly v. The Franklin Ins. Co., 43 Wis. 449, where the plaintiff had policies on his property, issued by different companies, aggregating ten thousand dollars. The policy issued by the defendant company was for $1,000. The property was destroyed by fire, and suit brought *421 on the policy. The answer alleged, as in this case, that it was provided in the policy, that the loss or damage should be established “ according to the true and actual marketable value ” of the property at the time of the loss, which, it was alleged in that case, did not exceed seven thousand dollars ; and the defendant claimed, that it was only liable for its proportion of that sum, being one tenth of that amount. The plaintiff demurred to the .answer, and the demurrer was sustained. It was insisted by the defendant, that if the statute ■ applied, it should be construed to mean, that the amount of . insurance written in the policy should be taken as prima facie the value of the property, so as, in case of total loss, to place the onus of proving the real value, upon the insurer instead of the insured; and, that the statute did not prevent the parties from agreeing in the policy, that the true value of the property should be the measure of the loss, and the stipulation to that effect in the policy, should control. But the court held otherwise. In the course of an able opinion by Cole, C. J., it is said, “ The words of this statute are neither obscure, doubtful nor ambiguous as to their meaning, and they therefore afford but little room for interpretation. In clear and precise terms they make, in case of total loss of real property without criminal fault of the assured, the amount of insurance written in the policy, the value of the property at the time of the loss; and that amount is fixed as the measure of damages. It is analogous to a valued policy; only here the statute peremptorily declares what shall be deemed to be the real value of the property at the time of loss, and what sum shall be paid as indemnity. And as the intention of the legislature is obvious, the statute clearly prescribing that the amount of insurance written in the policy shall be deemed the true value of the property at the time of loss, it results that the above allegation (of the answer) is bad and shows no defense. For if the statute is to have effect as enacted, nothing is left open in the case to proof; ‘ the true and actual cash and marketable value of the property ’ at the time it was destroyed, is not a matter to be inquired into, as the amount of insurance written in the policy determines the amount of the loss and fixes *422 the extent of the recovery.” Again he says, “We have no doubt. that the statute applies to the policy; and, so far as there is any conflict or inconsistency between it and the provisions of the policy, the statute must control. The law must be regarded as though written in the policy itself; and the stipulation that the loss shall be established according to the actual cash marketable value of the property when destroyed, being in conflict with the rule of damages prescribed by the statute, must fall.”
In Thompson v. The St. Louis Ins. Co., 43 Wis. 459, the construction given the statute in the preceding case of Reilly v. Ins. Co. was approved, and it is there held, that a stipulation in the policy, that the amount of the loss, in case of difference between the parties, should be settled by arbitration, and that no suit should be brought until an award was obtained “ fixing the amount,” has no effect, and that neither an arbitration nor award need be had or averred.
To the same effect is Thompson v. Ins. Co., 45 Wis. 388. In Bammessel v. The Brewers' Ins. Co., 43 Wis. 463, the answer alleged that the policy contained the condition that “ all fraud or attempt at fraud by false swearing or otherwise,” should cause a forfeiture of all claim under the policy, and that after the loss, the plaintiff made and delivered to the defendant, a false and fraudulent account of the alleged loss and damages, duly sworn to by him, in which he falsely and fraudulently stated the actual cash value of the property, immediately before the fire, to be materially greater than it was. This was-held to be no defense; for, as the statute fixed the amount of recovery at the sum written in the policy, false statements of its value could not be material or constitute a fraud. And Cayon v. The Ins. Co., 68 Wis. 510, holds the same way. In the Oskosh Gaslight Company v. The Germania Fire Insurance Co., 71 Wis. 454, the court say: “ The statute must be regarded as a part of the contract of insurance, and the amount written in the policy as liquidated damages agreed upon by the parties; and this is so notwithstanding other clauses in the policies inconsistent therewith: ” And the Supreme Court of Maine, speaking of a similar stat *423 ute of that state, and its effect on policies issued, after its adoption, says: “ The act is to be regarded as included in, and a part of the policies, issued since its passage. Nor is this any hardship upon the parties, for all are deemed to have contracted with a knowledge of its existence and subject to its provisions.” Emery v. Piscataqua F. & M. Ins. Co., 52 Me. 822, 326.
The law; as we conceive it to be, was administered in the trial court, and the circuit court committed no error in affirming its judgment.

Judgment affirmed.